Charles D. YODER, Plaintiff-Appellant,

v.

Captain Leonard PALMERI, Defendant-Respondent.

Court of Appeals

*No. 92–1879. Submitted on briefs April 2, 1993.—Decided June 17, 1993.*

(Also reported in 502 N.W.2d 903.)

For the plaintiff-appellant the cause was submitted on the briefs of *Charles D. Yoder*, pro se.

For the defendant-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Peter C. Anderson*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.  Charles Yoder, an inmate at the Waupun Correctional Institution, appeals from a summary judgment dismissing his action against a corrections official, Captain Leonard Palmeri.

Yoder sued Palmeri under the federal civil rights act, 42 U.S.C., sec. 1983, seeking both injunctive relief and money damages based on his claim that Palmeri had violated his right to due process of law when he intercepted a letter Yoder had written to an inmate in another institution without giving adequate reasons for doing so.[1] The trial court rejected the claim, as do we.

---

[1] Yoder does not claim that he was disciplined or punished for attempting to send the letter, nor has he alleged that he

The facts are not in dispute. In July, 1991, Yoder wrote to Wayne Taylor, an inmate at another Wisconsin corrections facility, the Wisconsin Resource Center (WRC). Palmeri, the "project captain" at WRC, was responsible for investigating matters that were considered to pose risks to security and order at WRC, and one of his duties was to review inmate-to-inmate correspondence received at the institution.

Yoder's letter to Taylor read in part as follows:

> I am trying to catch on the news what exactly happened down in the "Ville[."] In the paper today, there was an article about Stateville[2] being locked up due to a major disturbance — one prisoner killed, numerous Officer[ ]s injured, and the violence still goes on. Wisconsin sure could use a dose of that type shit.

Reading the letter, Palmeri determined that it could be considered as "promot[ing] rioting and physical injury of inmates and correctional staff" in violation of the Wisconsin Administrative Code and various state statutes and decided to confiscate it under the authority of Wis. Adm. Code sec. DOC 309.05(6). The rule, among other things, authorizes interception of inmate-to-inmate mail that "[c]oncerns activity that, if completed, would violate the laws of Wisconsin or the United States . . . ."

The rule also states that whenever such mail is intercepted, the sender and the intended recipient "shall receive a notice stating why the letter was not delivered . . . ." Wis. Adm. Code sec. DOC 309.05(6)(e)2. Following the procedures set forth in the rule, Palmeri

requested review of Palmeri's decision or sought review of the decision through the inmate complaint system.

[2] "Stateville" is a maximum-security prison in Illinois.

759

prepared a "Notice of Non-Delivery of Mail" stating that the letter would not be delivered because it "concerned 'an activity which, if completed, would violate the laws of Wisconsin, the United States or the Administrative Rules of the Division of Corrections.' " Yoder filed this action upon receiving the notice.

He argues that he has a constitutionally protected liberty interest — arising either under the first amendment to the United States Constitution or under state law — in being notified of "full and explicit reasons" for interception of his letter; and he contends that the notice provided by Palmeri under Wis. Adm. Code sec. DOC 309.05(6)(e)2 was inadequate to provide him with the process that was his due. Yoder states the argument quite broadly, never indicating what additional information he believes should have been provided in the written notification, other than to state that "[t]here are many thousands of . . . [l]aws" and he should not be forced to "venture a guess as to which [one] his letter may be violative of."

A constitutionally protected liberty interest may arise from the constitution itself or from provisions of state law. And to the extent that Yoder relies on either source, we reject his argument that either the regulations authorizing interception of inmate-to-inmate mail, or the manner in which those regulations were applied by Palmeri in this case, invade any constitutionally protected interest that he might have.

It is well established that the first amendment rights of prison inmates are subject to such limitation and regulation as may be reasonably related to legitimate concerns with the order and security of the prison environment. *Thornburgh v. Abbott*, 490 U.S. 401

(1989); *Turner v. Safley*, 482 U.S. 78 (1987). Thus, it is permissible for prison authorities to provide that all incoming mail may be inspected for contraband and read to detect possible threats to prison security. In *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986), for example, the court rejected an inmate's challenge to Illinois regulations allowing inspection of all inmate-to-inmate mail, stating that such a practice could not form "the basis of a valid constitutional challenge; this court ha[ving] already determined that provisions of this type do not impermissibly intrude on first amendment rights." In *Thornburgh*, the Supreme Court explained why this is so:

> [P]rison officials may well conclude that certain proposed interactions, though seemingly innocuous to lay[persons], have potentially significant implications for the order and security of the prison. Acknowledging the expertise of these officials and that the judiciary is "ill equipped" to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world. 490 U.S. at 407–08.

*Turner*, the leading case on inmate mail, upheld Missouri regulations permitting corrections officials to bar *any* correspondence between inmates unless it concerned legal matters or was sent to an inmate who was a member of the sender's immediate family. The Supreme Court rejected a "strict scrutiny" standard for such regulations, holding that even though they might impinge on inmates' constitutional rights, they are valid if they are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Court

761

listed four factors to be considered in determining reasonableness: whether there is a " 'valid, rational connection' between the regulation and the legitimate governmental interest put forward to justify it"; whether "there are alternative means of exercising the right that remain open to . . . inmates"; the effect accommodation of the asserted right would have on prison personnel, other inmates and the allocation of prison resources; and the availability of ready alternatives to the restriction. *Id.* at 89–90 (citations omitted).

Applying those considerations to the Missouri rules — which, we note, are considerably more restrictive than those in Wis. Adm. Code sec. DOC 309.05(6) — the Court concluded:

> The prohibition on correspondence is reasonably related to valid corrections goals. The rule is content neutral, it logically advances the goals of institutional security and safety . . . and it is not an exaggerated response to those objectives. On that basis, we conclude that [it] does not unconstitutionally abridge the First Amendment rights of prison inmates. *Turner*, 482 U.S. at 93.

We reach a similar conclusion here. The Wisconsin rules are, as the trial court determined, reasonably and rationally related to the state's interest in fostering order and security in its prisons — including the safety of prison workers and inmates alike — and Yoder has not suggested any "ready alternatives" to the provisions he challenges. In addition, inmates have alternative means of communicating with each other, as with others — as long as the communications do not

concern activities which, if completed, would violate state or federal law or other provisions of the code.[3]

We conclude, therefore, that the inspection and withholding of Yoder's letter to Taylor, and the regulations permitting such actions, meet the tests stated in *Thornburgh, Turner,* and other applicable cases. Yoder has not established that the constitution provides him with a protected interest that has been abridged or invaded by the government.

We reach a similar result with respect to Yoder's claim that Wisconsin law independently creates such an interest. In order for a state law or regulation to be considered as creating a constitutionally protected liberty interest, the state must employ "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed . . . and that [the challenged action] will not occur absent specific substantive predicates." *Colon v. Schneider,* 899 F.2d 660, 667 (7th Cir. 1990) (quoting *Hewitt v. Helms,* 459 U.S. 460, 471–72 (1983)) (citations omitted).

> Stated simply, "a State creates a protected liberty interest by placing substantive limitations on official discretion." . . . Our past decisions suggest . . . that the most common manner in which a State creates a liberty interest is by establishing "substantive predicates" to govern official

***

[3] Under other provisions of Wis. Adm. Code sec. DOC 309.05(6), inmate mail will not be delivered if it threatens criminal activity or physical harm to any person, threatens blackmail or extortion, concerns plans to escape or the sending of contraband in or out of the prison, is obscene or in code, or contains information creating a clear danger of harm to any person.

763

decisionmaking, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met . . . .

. . . For example, the failure of a Connecticut statute governing commutation of sentences to provide "particularized standards or criteria [to] guide the State's decisionmakers," defeated an inmate's claim that the State had created a liberty interest. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462 (1989) (citations omitted).

■

Thus, where the state regulations do not contain "specific directives to the decisionmaker that if the regulation's substantive predicates are present, a particular outcome must follow," but rather leave the decision to the officer's discretion, no liberty interest is created. *Id.* at 463.

Yoder focuses on the word "shall" in Wis. Adm. Code sec. DOC 309.05(6)(e)2 — "the sender [and recipient] shall receive a notice stating why the letter was not delivered" — claiming that it creates a protected liberty interest on the part of an inmate whose letter to another inmate is intercepted because it is considered to concern an activity which, if completed, would violate state or federal law. It is not enough, says Yoder, to frame the notice as Palmeri did here. He claims that he has an interest in being advised of the specific and particular laws or regulations implicated by the contents of the letter.

■

Not only does the argument run contrary to the cases just discussed, but Yoder has confused procedure with substance. The notification requirement is procedural only, and it is well established that state-created procedures governing the exercise of governmental

764

power cannot themselves be considered a liberty interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539–41 (1985) (rejecting the plurality's suggestion to the contrary in *Arnett v. Kennedy*, 416 U.S. 134 (1974), with respect to property interests); *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (liberty interests do not arise from state-created procedural devices); *Shango v. Jurich*, 681 F.2d 1091, 1100 (7th Cir. 1982) (argument that procedures established in prison regulations can themselves be considered a liberty interest held "analytically indefensible").

■ Because Yoder has not established that he has a constitutionally protected interest at stake in these proceedings, the trial court properly granted summary judgment dismissing his action.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*concurring*).

> The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a "liberty" interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment. As such, it is protected from arbitrary governmental invasion.

*Procunier v. Martinez*, 416 U.S. 396, 417–18 (1974), *overruled in part, Thornburgh v. Abbott*, 490 U.S. 401 (1989). Yoder does not claim that the administrative code provisions—Wis. Adm. Code secs. DOC 309.05 (Inmate mail) and DOC 309.06 (Publications)—violate his first amendment right of free speech. He claims that the institution's implementation of those regulations violates his right to due process because the

decision of the institution to censor or withhold delivery of his letter in this case was not accompanied by minimum procedural safeguards. I conclude that Yoder failed to make use of the procedural safeguards available to him and waived his right to complain that his due process rights were violated. I therefore concur in the court's mandate, but not its opinion.

In *Procunier*, the Court said:

> The District Court required that an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence. These requirements do not appear to be unduly burdensome . . . .

416 U.S. at 418–19. The department has implemented Wis. Adm. Code secs. DOC 309.05 and DOC 309.06 by a form titled "Notice of Non-Delivery of Mail." The form includes the name of the intended receiver, the sender, the date postmarked and the item rejected. The form also includes boxes which may be checked to show the reason(s) for non-delivery. The statement following each box describes that provision of Wis. Adm. Code sec. DOC 309.05 or DOC 309.06 allegedly violated.

In this case, Captain Palmeri checked the box which reads: "Item concerns an activity which, if completed, would violate the laws of Wisconsin, the United States or the administrative rules of the Division of Corrections." This reason for non-delivery is based upon Wis. Adm. Code sec. DOC 309.05(6)(c)5, which provides that incoming and outgoing mail shall not be delivered if it: "Concerns activity that, if completed, would violate the laws of Wisconsin or the United

States or the administrative rules of the department of corrections . . . ."

Yoder claims that the form violates his right to due process under the fourteenth amendment because the mere restatement of the reason for non-delivery of his letter in terms of the rule does not sufficiently advise him of the reason for non-delivery of his letter. He claims that he must guess as to what part of his letter the officer considered to concern an activity which would violate the laws or administrative regulations.

I agree that Yoder is entitled to be advised of the reason for non-delivery of his letter. I also believe that the form used by the department to advise the sender and intended receiver of the reason for non-delivery of a letter does not adequately explain the officer's reasons in this case. There are items enumerated as reasons for non-delivery which are so self-evident that no further explanation is necessary. For example, one reason is that the "item is in code." That reason needs no further explanation.

However, I agree with Yoder that in this case, merely checking the box on the form did not adequately inform him and the intended receiver of the reason for non-delivery of Yoder's letter. But due process, as defined by the Court in *Procunier*, does not require that the decision to censor or withhold delivery of a particular letter must be fully explained in the notice of non-delivery. In *Procunier*, the Court held that notice of the rejection of a letter accompanied by a reasonable opportunity to protest the non-delivery was sufficient to satisfy the fourteenth amendment.

Under the institution's procedures, both the sender and intended receiver have an opportunity to appeal the non-delivery. Form DOC–243, which Yoder claims is unconstitutional, includes notice to the

sender and the intended receiver that: "If you dispute this decision, you have the right to appeal to the superintendent by submission of a written complaint."

If such an appeal is taken, I believe that the "minimum procedural safeguards" required under *Procunier* include an explanation by the superintendent (or equivalent officer) as to the offensive material which caused the institution to reject delivery of the inmate's letter. I believe that the fourteenth amendment requires that the superintendent file an "answer" in response to the sender's or intended receiver's written complaint. Due process does not require a formal hearing. However, I believe that due process does require that after the superintendent has "answered" the sender's or intended receiver's written complaint, the sender or intended receiver be given an opportunity to voice his or her reasons why the decision should be reversed.

Yoder did not file a written complaint with the superintendent. However, the intended recipient, Wayne Taylor, filed a written complaint with the director of the institution on July 23, 1991. The director responded in a memorandum as follows:

> Upon your request of July 23, 1991, I have reviewed the correspondence in question and the reasons for the non[-]delivery of mail.
>
> After careful and impartial review, I must support Capt. Palmeri's decision to not deliver the letter for reasons stated.

I do not consider this response to adequately satisfy *Procunier's* command that the decision not to withhold delivery of Yoder's letter be "accompanied by minimum procedural safeguards."

However, Yoder lacks standing to complain that the director's response to Taylor's complaint was inade-

quate. By not filing a written complaint, Yoder waived his right to insist that he be sufficiently advised of the reasons for non-delivery of his letter and given an opportunity to respond to those reasons. *See Wengerd v. Rinehart*, 114 Wis. 2d 575, 587, 338 N.W.2d 861, 868 (Ct. App. 1983) ("Due process objections can be waived . . . ."). Because Yoder waived his right to the minimum procedural safeguards required by *Procunier*, I concur in the court's mandate. However, I do not join in the court's opinion.