STATE of Wisconsin EX REL. Jane PECKHAM, Petitioner-Appellant,

v.

Kristine KRENKE, Warden, Respondent-Respondent.

Court of Appeals

*No. 97–3359. Submitted on briefs April 12, 1999.—Decided August 4, 1999.*

(Also reported in 601 N.W.2d 287.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Jane Peckham, pro se.*

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Charles D. Hoornstra,* assistant attorney general.

Before Brown, P.J., Nettesheim and English,[1] JJ.

ENGLISH, J.   Jane Peckham, an inmate at the Taycheedah Correctional Institution (TCI), appeals from an order affirming the disciplinary action taken against her by Warden Kristine Krenke for disobeying orders and committing fraud. Peckham alleges that her legal mail was opened outside of her presence in viola-

---

[1] Circuit Judge Dale L. English is sitting by special assignment pursuant to the Judicial Exchange Program.

tion of administrative rules; therefore, the evidence obtained from the unlawful mail opening cannot serve as the basis for the disciplinary action against her.

Although we agree that Peckham's legal mail was opened outside of her presence in violation of administrative rules, the violation is not of constitutional dimension and does not implicate any statute or rule that would require the exclusion of the mail from evidence during the disciplinary process. We therefore conclude that it properly was considered during Peckham's disciplinary proceedings. As for Peckham's remaining arguments, we find they are either waived or without merit. Accordingly, we affirm the circuit court's decision upholding the disciplinary action.

## FACTS

Peckham was issued a conduct report for allegedly violating WIS. ADM. CODE §§ DOC 303.24 (Disobeying Orders) and 303.32 (Enterprises and Fraud). The conduct report stemmed from Officer LaCroix's decision to open a letter sent by Peckham that had been returned due to an insufficient address. Although the envelope was addressed to "Attorney-K. Leslie," the letter inside the envelope was to Peckham from Harper Collins Publishers. While the envelope indicated the contents were legal in nature, they in fact were not. It is undisputed that LaCroix opened the envelope outside of Peckham's presence.

At the disciplinary hearing, Peckham contended that her communication with Kevin Leslie was a legal matter because it concerned the refund of money, that the envelope was designated as legal mail and was opened illegally by LaCroix, and finally that her conduct did not violate any rules because she was merely trying to get her money refunded. The hearing officer

found Peckham guilty of violating both WIS. ADM. CODE §§ DOC 303.24 and 303.32 based on the content of the conduct report, as well as on the content of the envelope and the letter in question.[2] The rationale set forth by the hearing officer in support of the findings of guilt was threefold: (1) Peckham never had possession of the book in question (it was not on her property list) and was trying to obtain reimbursement for an item that she never had, (2) Peckham had received several prior conduct reports for the same type of an offense, and (3) Peckham attempted to utilize legal mail for nonlegal purposes. The hearing officer imposed discipline of six days of segregation, 120 days of program segregation and the destruction of the contraband.

Peckham appealed the decision of the hearing officer to Krenke. At this level of the administrative process, Peckham, in addition to making the arguments made to the hearing officer, argued for the first time that: (1) WIS. ADM. CODE § DOC 303.24 was a lesser included offense of WIS. ADM. CODE § DOC 303.32 so she should not have been convicted of both; (2)

---

[2] The envelope was addressed to "Attorney-K. Leslie" at a New York City address. The envelope also contained the return address for Peckham at TCI. Stamped on the envelope was the notation "Return To Sender Insufficient Address."

The letter consisted of a letter to Peckham dated January 25, 1996, from Kevin Leslie of Harper Collins Publishers. Implicit in the letter is that Peckham previously contacted Harper Collins Publishers concerning a complaint that she had regarding the binding of one of its volumes. The letter goes on to provide that Harper Collins Publishers was sending Peckham two additional volumes with its apologies and was also going to refund the purchase price for the improperly bound volume. It appears that Peckham wrote her social security number on a copy of the letter from Leslie and was sending it to him to effectuate the refund at the time of the offense.

§ DOC 303.32 was ambiguous; (3) the hearing officer was biased; and (4) the conduct report was, in so many words, the result of a conspiracy by TCI staff to have her adjudicated guilty of rule violations on a continuous basis. Krenke affirmed.

Peckham then filed a petition for writ of certiorari with the Fond du Lac County Circuit Court seeking a review of the decisions by the hearing officer and Krenke. The circuit court affirmed the decisions of the hearing officer and Krenke.[3] Peckham appeals.

---

[3] Peckham, in her initial brief filed with the circuit court, argued that the envelope and its contents were legal in nature, that the envelope was illegally opened by LaCroix, that there was no evidence to support the findings of guilt, and that the conduct report was the result of a conspiracy by staff at TCI to continuously convict her of rule violations.

In her reply brief to the circuit court, Peckham raised two additional arguments for the first time. First, Peckham argued that the decision by Krenke was untimely, having been allegedly issued on March 14, 1996. This argument was not renewed on appeal, however, and is accordingly deemed abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285, 292 (Ct. App. 1998), *review denied*, 224 Wis. 2d 263, 590 N.W.2d 489 (1999). Second, Peckham argued that she did not have any history of similar prior offenses.

In its decision, the circuit court affirmed the disciplinary action against Peckham for the following reasons: (1) she waived the argument that the letter was illegally seized and opened because she did not raise it before the hearing officer; (2) the mail was incoming and was not legal in nature, but rather was an attempt on the part of Peckham to circumvent the mail rules; and (3) Peckham failed to meet her burden of proving that the disciplinary decisions were arbitrary and capricious.

## DISCUSSION

### I. Standard of Review

In *State ex rel. Ortega v. McCaughtry*, 221 Wis. 2d 376, 385–86, 585 N.W.2d 640, 646 (Ct. App. 1998), the principles governing judicial review on certiorari were summarized as follows:

> Judicial review on certiorari is limited to whether the agency's decision was within its jurisdiction, the agency acted according to law, its decision was arbitrary or oppressive and the evidence of record substantiates the decision. The scope of our review on certiorari is identical to that of the trial court. We decide the merits of the matter independently of the trial court's decision. The evidentiary test on certiorari review is the substantial evidence test, under which we determine whether reasonable minds could arrive at the same conclusion the committee reached. "The facts found by the committee are conclusive if supported by 'any reasonable view' of the evidence, and we may not substitute our view of the evidence for that of the committee." [Citations omitted; quoted sources omitted.]

In addition, the inmate has the burden of proving by a preponderance of the evidence that the actions of, in this case, the hearing officer and Krenke, were arbitrary and capricious. *See State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 550, 185 N.W.2d 306, 311 (1971). The scope of this court's review is limited to the record of the prison disciplinary proceedings. *See State ex rel. Irby v. Israel*, 95 Wis. 2d 697, 703, 291 N.W.2d 643, 646 (Ct. App. 1980).

## II.  Violation of Wis. Adm. Code § DOC 309.05

Peckham argues that her letter to "Attorney K-Leslie," which was returned to her due to an insufficient address,[4] was opened outside of her presence in violation of WIS. ADM. CODE § DOC 309.05.[5] The State counters by arguing that the mail was not legal mail even though the word "Attorney" was found on the envelope because Leslie was not an attorney and an inspection of the letter disclosed an attempt on the part of Peckham to circumvent the institution's mail rules to perpetrate a fraud. The State concludes by arguing that the envelope, being nonlegal in nature, could be opened and examined pursuant to § DOC

---

[4] Peckham has consistently taken the position that the mail in question was incoming mail which, by administrative rule, should have been opened in her presence. The State has also characterized the mail as incoming mail. Such being the case, we will likewise treat the mail as incoming mail for the purpose of this analysis. We do not address, in the context of the analysis contained in this opinion, any violation of the administrative rules concerning *outgoing* inmate mail.

[5] Effective October 1, 1998, WIS. ADM. CODE § DOC 309.05 was amended and renumbered as WIS. ADM. CODE § DOC 309.04. All references in this opinion are to the former § DOC 309.05, which provided in relevant part:

> (4)  Correspondence sent by an inmate to any of the parties listed below may not be opened for inspection or read by institution staff. Correspondence received by an inmate from any of these parties may be opened by institution staff in the presence of the inmate. . . . This subsection applies to the following parties:
>     (a)  An attorney, if the correspondence is readily identifiable as being from an attorney . . . .

We do not address how, if at all, our analysis would be affected by the substantive modifications to WIS. ADM. CODE DOC 309.05 as reflected in the current WIS. ADM. CODE § DOC 309.04.

309.05(2)(a).[6] Therefore, Peckham has failed to prove by a preponderance of the evidence a violation of § DOC 309.05.[7]

We disagree with the State's position. Although we do not condone any attempt by inmates to subvert institution mail rules by the use of legal titles, such as "Attorney," on envelopes to avoid having the mail opened and examined, we are constrained to hold that the envelope addressed to "Attorney-K. Leslie" constituted incoming legal mail that could only be opened and examined by TCI staff in the presence of Peckham. *See* WIS. ADM. CODE § DOC 309.05(4)(a). Because it is undisputed that Peckham was not present when LaCroix opened the envelope and examined its contents, the opening of the envelope and examination of its contents was done in violation of § DOC 309.05(4). Any explicit or implicit finding by the hearing officer and Krenke to the contrary is not supported by the record and the administrative rule in question.

---

[6] WISCONSIN ADM. CODE § DOC 309.05(2)(a) provides in relevant part as follows:

> Incoming mail addressed to inmates may be opened, examined, censored, and delivered under this section only if the inmate consents in writing to receive mail through institution mail services.

[7] Peckham also argued that the mail in question was legal mail because it concerned a refund of money which was a property interest protected by the United States and Wisconsin Constitutions. We agree with the State that it is not the content of the correspondence which dictates whether mail is to be considered legal in nature pursuant to the administrative rule, but rather to whom the mail is sent or from whom the mail is received. *See* WIS. ADM. CODE § DOC 309.05(4)(a).

·This does not end our analysis, however. The issue that we must address, and the central issue in this case, is whether evidence obtained as a result of the opening and examination of Peckham's incoming legal mail outside of her presence, and in violation of WIS. ADM. CODE § DOC 309.05(4), should be excluded from consideration during the disciplinary process.

### III. Application of Exclusionary Rule

### A. General

Implicit in Peckham's arguments is her contention that the opening and examination of her incoming legal mail, in violation of WIS. ADM. CODE § DOC 309.05(4), should preclude consideration during the course of the disciplinary proceedings of the evidence obtained by the unlawful mail opening. The State counters that the exclusionary rule does not apply here because the evidence (i.e., the envelope and the letter), although obtained in violation of an administrative rule, was not obtained in violation of Peckham's constitutional rights, citing, among other cases, *Ware v. State*, 201 Wis. 425, 230 N.W. 80 (1930), and *Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir. 1993). We agree with the State's argument in this regard and, for the reasons discussed below, will not apply the exclusionary rule to the evidence seized in this case.

The exclusionary rule was first adopted in Wisconsin in *Hoyer v. State*, 180 Wis. 407, 193 N.W. 89 (1923). In *Hoyer*, our supreme court held that evidence seized by state officers in violation of an individual's constitutional rights was inadmissible against that individual in a criminal proceeding. *See id.* at 415, 193 N.W. at 92.

In *Ware*, our supreme court adopted a corollary to the exclusionary rule to the effect that evidence wrong-

fully or illegally obtained is not inadmissible, so long as it was not obtained in violation of an individual's constitutional rights. *See Ware*, 201 Wis. at 427, 230 N.W. at 81. The *Ware* rule was expanded to an extent in several succeeding criminal cases, with the current formulation of the rule being that wrongfully or illegally obtained evidence is to be suppressed only where the evidence was obtained in violation of an individual's constitutional rights or in violation of a statute that expressly requires suppression as a sanction. *See State v. Verkuylen*, 120 Wis. 2d 59, 61, 352 N.W.2d 668, 669 (Ct. App. 1984); *State v. King*, 142 Wis. 2d 207, 213–14, 418 N.W.2d 11, 13 (Ct. App. 1987); *State v. Mieritz*, 193 Wis. 2d 571, 574, 534 N.W.2d 632, 633 (Ct. App. 1995); *State v. Thompson*, 222 Wis. 2d 179, 189, 585 N.W.2d 905, 910 (Ct. App.), *review denied*, 222 Wis. 2d 675, 589 N.W.2d 629 (1998). Significantly, the *Ware* rule has been applied not only in criminal cases, but also in civil proceedings. *See State ex rel. Alford v. Thorson*, 202 Wis. 31, 33–34, 231 N.W. 155, 156 (1930); *Kidder v. Kidder*, 222 Wis. 183, 190–91, 268 N.W. 221, 225 (1936).

In summary, the above cases stand for the proposition that the exclusionary rule is applicable in civil and criminal proceedings only where the evidence sought to be excluded was obtained in violation of a constitutional right or a statute that specifically requires suppression of wrongfully or illegally obtained evidence as a sanction. *See State ex rel. Struzik v. DHSS*, 77 Wis. 2d 216, 221, 252 N.W.2d 660, 662 (1977) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)) ("judicially created exclusionary rule 'has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons' ").

The issue that we must address, then, is whether the opening of Peckham's envelope, and the examination of the letter contained therein, constituted a violation of her constitutional rights or a violation of a statute specifically requiring suppression of wrongfully or illegally obtained evidence.

## B. Violation of Constitutional Rights

Although the State cites to *Brewer* for the proposition that the opening and inspection of incoming inmate legal mail outside of the inmate's presence does not violate an inmate's constitutional rights, the current state of the law in that regard is unfortunately not as clear as the State would make it seem. Our supreme court has not addressed the issue of whether the opening and inspection of an inmate's incoming legal mail outside of the inmate's presence violates an inmate's constitutional rights. We have found no appellate case law in Wisconsin that addresses this issue.

The United States Supreme Court, which has addressed issues concerning inmate mail, has not definitively spoken on this issue. However, the analysis contained in the seminal case on inmate legal mail, *Wolff v. McDonnell*, 418 U.S. 539 (1974), is instructive.

In *Wolff*, the issue addressed was "whether letters determined or found to be from attorneys may be opened by prison authorities in the presence of the inmate" to whom addressed. *Id.* at 575. It was argued in *Wolff* that the inmate's First, Sixth and Fourteenth Amendment rights were infringed upon when an institution's personnel opened and inspected incoming legal mail for contraband. *See id.* In analyzing the constitutional claims, the Court stated that it had not yet recognized the First Amendment rights of inmates in this context, and further noted that freedom from cen-

sorship was not the equivalent of freedom from inspection or perusal. *See id.* at 575–76. The Court went on to limit the reach of the Sixth Amendment to the protection of the attorney-client relationship from intrusion in a criminal setting and noted that access to the courts based on the Due Process Clause of the Fourteenth Amendment had not yet been extended to the extent argued for by the inmates. *See id.* at 576. That analysis notwithstanding, the Court did not decide which, if any, of the asserted rights were operative. For the purpose of its decision, it assumed that a constitutional right was implicated by the procedure in question, leaving the issue to be whether the practice violated any such right. *See id.* The Court concluded that the procedure which allowed for the opening of an inmate's incoming legal mail in the inmate's presence did not result in any constitutional violation and, in fact, that the state through such a procedure had "done all, and perhaps even more, than the Constitution requires." *See id.* at 576–77.

The Seventh Circuit also has not definitively spoken on the issue of whether the opening and inspection of incoming legal mail outside of the presence of the inmate violates the inmate's constitutional rights. However, it has held that all incoming nonprivileged inmate mail can be opened and read on a spot-check basis without violating an inmate's constitutional rights. *See Smith v. Shimp*, 562 F.2d 423, 426 (7th Cir. 1977). It also has held that an inmate is entitled to be present during the opening of legal mail addressed to him or her. *See Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974).

The remaining circuits that have addressed this issue have reached conflicting results on conflicting grounds. Importantly, several courts have found no

constitutional violation. In *Morgan v. Montanye*, 516 F.2d 1367 (2d Cir. 1975), the court held that the opening and inspection of an inmate's incoming legal mail outside of the inmate's presence on one occasion did not result in a constitutional violation. *See id.* at 1370–71. In *Brewer*, the Fifth Circuit analyzed applicable United States Supreme Court precedent and held that the opening and inspection of an inmate's incoming legal mail outside of the inmate's presence was not a constitutional violation. *See Brewer*, 3 F.3d at 825.

Contrary conclusions have been reached by other circuits. *See Bieregu v. Reno*, 59 F.3d 1445, 1450–51 (3d Cir. 1995) (discussing the cases in other circuits concerning this issue). We have reviewed cases from the other circuits and have gleaned the following principles from them: (1) the various courts that have found a constitutional violation do not agree on the precise constitutional right(s) of the inmate which was violated; (2) the prison practices complained of involved an alleged pattern and practice of opening and inspecting incoming legal mail outside of the inmate's presence; and (3) the mail that was opened and inspected was actually mail from an inmate's attorney, from judges in cases in which the inmate was involved, etc. *See, e.g., id.* at 1449, 1452, 1455, 1458; *see also Jensen v. Klecker*, 648 F.2d 1179, 1182–83 (8th Cir. 1981) (noting that many of the inmate's letters that were opened were not actually legal mail and were not, therefore, privileged).

Analyzing the present case in light of the principles enunciated above, we are mindful, first of all, that the record does not disclose a pattern and practice of staff opening and inspecting Peckham's incoming legal mail outside of her presence. We also are mindful that the mail was not actually legal mail in substance, but rather was a letter to Peckham from a publishing com-

pany.[8] As a result, all of the cases concerning the opening and inspection of an inmate's incoming legal mail outside of the inmate's presence, which actually consisted of letters from attorneys and from courts, are distinguishable.

In sum, our supreme court, the United States Supreme Court and the Seventh Circuit have not definitively decided the issue of whether the opening and inspection of incoming legal mail outside of the presence of the inmate violates the inmate's constitutional rights. With respect to the remaining circuits, those that have addressed the issue are split, and for the reasons stated above those circuits that have held such a practice to constitute a constitutional violation are distinguishable from the present case. Accordingly, because the record does not contain any pattern and practice of opening and inspecting Peckham's incoming legal mail outside of her presence, and because the mail at issue here did not involve any communication between Peckham and her attorney or the courts, we hold that the opening and inspection of her incoming

---

[8] This is significant because the underpinnings of the various courts' analyses of inmate legal mail claims are in part the Sixth Amendment right to counsel, and in part the right of access to the courts based on the Due Process Clause of the Fourteenth Amendment. Here, neither right is implicated because the mail did not involve a criminal proceeding, was not from an attorney, judge or court, and did not concern pending litigation. As far as any First Amendment right is concerned, it must be remembered that in *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974), the United States Supreme Court stated that it had yet to recognize the First Amendment rights of inmates in this context.

legal mail outside of her presence did not violate her constitutional rights.[9]

## C. Violation of Statute or Rule

The next issue is whether the opening and examination of the mail under these circumstances violated any statute that requires suppression of the evidence. We are not aware of any statute which has been violated by the opening and examination of Peckham's incoming legal mail outside of her presence. However, we determine it to be appropriate to examine WIS. ADM. CODE § DOC 309.05, as well as the administrative rules governing inmate disciplinary proceedings, to determine whether § DOC 309.05 or any other administrative rule would require suppression of the envelope and letter during the disciplinary proceedings in question.

An examination of WIS. ADM. CODE § DOC 309.05 discloses that it does not contain any provision stating expressly, or even impliedly, that the violation of the mail rules by institution staff requires suppression of the evidence at any disciplinary hearing. Instead, a fair reading of § DOC 309.05 leads to the conclusion that it was drafted with institution security at the forefront, while also protecting the constitutional rights of inmates to the extent not limited by order and security concerns of the prison environment. *See Yoder v. Palmeri*, 177 Wis. 2d 756, 762, 502 N.W.2d 903, 906 (Ct.

---

[9] It is ironic that Peckham appears to be using the institution's mail rules as a means to preclude an examination of her mail (i.e., by addressing the envelope purportedly to an attorney) in an attempt to further an unlawful end, and, when her scheme is uncovered, she attempts to use the same rules to preclude any discipline for her misconduct. This is an absurd result which is avoided by virtue of the above analysis.

App. 1993); *Lomax v. Fiedler*, 204 Wis. 2d 196, 209, 554 N.W.2d 841, 846 (Ct. App. 1996).

An examination of WIS. ADM. CODE § DOC 303.86(2)(a) is also instructive.[10] At the outset, we reject the State's argument that § DOC 303.86(2)(a) expressly deals with this issue because § DOC 303.86(2)(a) provides that only relevant evidence gathered in "violation of this chapter" may be admissible at a disciplinary hearing, and it is uncontroverted that the gathering of the evidence was not in violation of ch. DOC 303, but rather was in violation of WIS. ADM. CODE § DOC 309.05. However, we find the content of § DOC 303.86(2)(a) instructive to the extent that it precludes the exclusion of relevant evidence obtained by institution staff in violation of the rules contained in ch. DOC 303. It thus appears to be the intent of the drafters of ch. DOC 303 that any relevant evidence be considered at a prison disciplinary hearing, even if obtained in violation of administrative procedural rules by institution staff.[11] If such is the case where evidence is obtained in violation of ch. DOC 303, we do not accept that the fact the evidence here was obtained in violation of an administrative rule governing inmate mail requires a contrary result.

---

[10] WISCONSIN ADM. CODE § DOC 303.86(2)(a) provides as follows:

> An adjustment committee or a hearing officer may consider any relevant evidence, whether or not it would be admissible in a court of law and whether or not any *violation of this chapter* occurred in the process of gathering the evidence. [Emphasis added.]

[11] We were unable to locate or obtain any drafting notes or any other records concerning WIS. ADM. CODE §§ DOC 309.05 and 303.86. Our construction of these sections is, accordingly, based on their language and their interpretation by the courts.

In sum, the opening of Peckham's envelope and the examination of the letter contained therein did not violate any statute or administrative rule that expressly or impliedly provided for the exclusion of such evidence.[12] In addition, as previously discussed, Peckham's constitutional rights also were not violated. Accordingly, the envelope and the letter contained therein, which were obtained in violation of WIS. ADM. CODE § DOC 309.05, were properly admissible and considered by the hearing officer and Krenke during the disciplinary process.[13]

## IV. Remaining Arguments

Peckham contends that there is insufficient evidence to support the decisions of the hearing officer and Krenke. We disagree and conclude that based on our review of the record there is substantial evidence to support the decision of the hearing officer finding Peckham guilty of both violations and imposing the

[12] The terms "examination" and "examining" are used interchangeably with the terms "inspection" and "inspecting" in this opinion.

[13] We recognize that a contrary result was reached in *Knight v. Goord*, 681 N.Y.S.2d 719 (N.Y. App. Div. 1998). The court in that case, without any analysis, annulled a determination finding an inmate guilty of violating a prison disciplinary rule on the basis that the evidence, an outgoing letter which was opened and read in violation of institution rules, was seized in contravention of these rules. *See id.* at 720. First, *Knight* is distinguishable because it involved outgoing mail, whereas this case involves incoming mail. More importantly, we do not find the conclusion reached by the court in *Knight* to be persuasive because of the lack of any analysis and because our analysis of the issues in this case in conjunction with the applicable law lead us to a contrary result.

disposition that was imposed, as well as to support Krenke's affirmance. We also conclude that there is insufficient evidence in the record to support Peckham's allegations of a staff conspiracy concerning the offenses in question.[14]

Finally, we hold that Peckham has waived various issues by virtue of not raising them before the appropriate tribunal. These include the arguments that WIS. ADM. CODE § DOC 303.24 is a lesser included offense of WIS. ADM. CODE § DOC 303.32, and that § DOC 303.32 is ambiguous, neither of which was raised during the disciplinary hearing; the argument that there was no proof of prior similar offenses, which was first raised in the circuit court; and the argument that Peckham had no consent on file at TCI to receive mail, which was first raised on appeal. These issues are therefore waived. *See Saenz v. Murphy*, 162 Wis. 2d 54, 63, 65, 469 N.W.2d 611, 615 (1991); *State v. Divanovic*, 200 Wis. 2d 210, 226, 546 N.W.2d 501, 507 (Ct. App. 1996) (issues raised for the first time on appeal are waived).

## CONCLUSION

In conclusion, we affirm the decisions of the hearing officer and Krenke finding Peckham guilty of violating WIS. ADM. CODE §§ DOC 303.24 and 303.32, and imposing the disposition in question because, for the reasons discussed in this opinion, we conclude that said decisions were within the jurisdiction of the DOC, that the DOC acted according to law, that the decisions were not arbitrary, oppressive or capricious, and that

[14] Peckham's allegations in this regard are that the letter in question never left TCI, that staff at TCI conspired to have her adjudicated guilty of rule violations on a continuous basis, that the hearing officer was biased, that evidence was destroyed and that she was singled out for punishment.

the decisions were supported by substantial evidence in the record.

*By the Court.*—Order affirmed.