STATE of Wisconsin, Plaintiff-Respondent,

v.

Joseph STEFFES, Defendant-Appellant.†

Court of Appeals

*No. 02–1300–CR. Submitted on briefs November 11, 2002.—
Decided February 13, 2003.*

2003 WI App 55

(Also reported in 659 N.W.2d 445.)

† Petition to review denied 4-22-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel P. Ryan* of *Flottmeyer, Burgos, Ryan & Sayner*, La Crosse.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah K. Larson*, asst. attorney general, and *James D. Doyle*, attorney general.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. VERGERONT, P.J. Joseph Steffes, an inmate at Fox Lake Correctional Institution, appeals the judgment of conviction for solicitation to deliver marijuana to a prisoner within a prison as a repeat offender.[1] Steffes contends the trial court erred in denying his motion to suppress marijuana found in mail addressed to him. Steffes's position is that opening the envelope outside his presence, when the envelope was marked "legal papers," violated WIS. ADMIN. CODE § DOC 309.04(3)(a),[2] his Sixth Amendment right to counsel

---

[1] WISCONSIN STAT. §§ 961.41(1)(h)1, 939.30(1), 961.465(2), 961.49, and 939.62(2) (2001–02). All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] WISCONSIN ADMIN. CODE § DOC 309.04 provides in part:

**Inmate mail. (1)** The department may allow inmates to communicate with their families, friends, government officials, courts, and other people concerned with the welfare of inmates consistent with the need to protect the public.

**(2)**(a) Incoming mail addressed to inmates may be opened, examined, censored, and delivered under this section only if the inmate consents in writing to receive mail through institution mail services.

(b) If an inmate does not consent under par. (a), the institution shall return incoming mail addressed to the inmate to the post office unopened marked, "refused."

(c) The department shall permit an inmate to correspond with anyone.

(d) All outgoing inmate mail shall be stamped. The stamp shall identify the mail as coming from the Wisconsin state prison system.

**(3)** *Institution staff may not open or read for inspection mail sent by an inmate to any of the parties listed in pars. (a) to (j), unless the security director has reason to believe that the mail contains contraband. Institution staff may open mail received by an inmate from any of these parties in the presence of the inmate.* Staff may inspect the document but only to the extent necessary to deter-

844

and his Fourteenth Amendment right not to be deprived of liberty without due process of law.

¶ 2. We conclude that the opening of the envelope outside Steffes's presence did not violate Steffes's Sixth Amendment right to counsel because there is no evidence that the documents in the envelope were communications with Steffes's attorney or somehow related to an attorney's representation of Steffes in a criminal matter. We also conclude there was no violation of his Fourteenth Amendment right not to be deprived of liberty without due process of law because WIS. ADMIN. CODE § DOC 309.04(3)(a) does not create a liberty interest under *Sandin v. Conner*, 515 U.S. 472 (1995). Therefore, even if there were a violation of § DOC

---

mine if the mail contains contraband, or if the purpose is misrepresented. Staff may read the mail if staff has reason to believe it is other than a legal document. The department shall process contraband in accordance with sub. (4) (e) (intro.) and 1., (f) and (g). This subsection applies to mail clearly identifiable as being from one or more of the following parties:

(a) *An attorney.*

(b) The governor of Wisconsin.

(c) Members of the Wisconsin legislature.

(d) Members of the United States congress.

(e) The secretary of the department.

(f) The administrator of the division.

(g) The attorney general or an assistant attorney general of Wisconsin.

(h) An investigative agency of the federal government.

(i) The clerk or judge of any state or federal court.

(j) The President of the United States.

(Emphasis added.)

309.04(3)(a), an issue we do not decide, the trial court properly ruled that Steffes was not entitled to suppression of the marijuana found in the envelope. Accordingly, we affirm.

## BACKGROUND

¶ 3. Lieutenant Clyde Maxwell, an officer at Fox Lake Correctional Institution, testified at the preliminary hearing and at the motion hearing as follows. He had received anonymous notes stating that Steffes was dealing drugs in the institution and therefore he monitored a phone call Steffes made to his brother Michael on December 13, 1999.[3] Steffes asked Michael whether he had received Steffes's letter and Michael said he had; Steffes asked if the letter had been tampered with and Michael said no. According to Lieutenant Maxwell, Steffes told Michael to "follow his instructions and send it back to me" and "[t]here's a white envelope and some stamps."

¶ 4. As a result of this phone conversation, Lieutenant Maxwell requested that a mail monitor be placed on Steffes's incoming mail—meaning that, once ap-

---

[3] In 1997 Steffes had signed a written consent form consenting to the monitoring and recording of his phone calls by institution staff. Whenever inmates arrive at the institution, they are advised that the phone system monitors and records calls placed by inmates, and if they do not sign a consent form, the inmate's I.D. number is not logged into the system and they cannot use the phone with their I.D. number. Before every phone call begins, the inmate hears a warning that the call will be monitored and recorded. Lieutenant Maxwell testified that the phone system monitors and records every inmate's phone call going out of the institution.

proved by the security director, Steffes's mail would be sent to Lieutenant Maxwell for inspection for contraband.

¶ 5. On December 17, 1999, Lieutenant Maxwell monitored a second phone call, this time from Steffes to his brother Danny. During the conversation Steffes asked Danny if he had spoken with Michael about the letter that Steffes had sent to Michael, and Danny answered yes. Steffes asked Danny to lend Michael money so that he could buy a "dime bag," which, Lieutenant Maxwell testified, is a $10 package of marijuana. Steffes told Danny to return the dime bag to the prison in the envelope that Steffes had sent Michael.

¶ 6. On December 25, 1999, Lieutenant Maxwell monitored another phone call from Steffes to Danny. In this conversation, Steffes, in Lieutenant Maxwell's words, asked Danny if he "could just take care of it for him, instructing him [Danny] to go across the street to Rudy and purchase his dime bag."

¶ 7. On December 29, 1999, Lieutenant Maxwell was notified by the mailroom that there was a suspicious envelope addressed to Steffes. The envelope was white, approximately 8–1/2 inches by 11 inches, with the return address of "Milwaukee State Public Defender's office, Milwaukee, Wisconsin" typewritten on a white piece of paper taped to the front of the envelope; there was no letterhead or seal on the return address. The words "legal papers" were handwritten with a magic marker on the front and back of the envelope.[4] Lieutenant Maxwell was suspicious of the envelope because, according to the mail sergeant, legal mail is usually metered rather than bearing stamps as

[4] We base this description of the envelope on the trial court's description.

did this envelope; legal mail is usually stamped "attorney-client"; and the return address usually is an embossed stamp rather than being taped on. Lieutenant Maxwell opened the envelope outside Steffes's presence. In the envelope were approximately five to ten pages of paper and, flattened between them, a green, leafy substance that tested positive for marijuana. Lieutenant Maxwell answered as follows to questions on the contents of the envelope.

> Q: Now I think you testified earlier that when you opened this particular envelope, you found a substance which you believed to be marijuana; correct?
>
> A: That's correct.
>
> Q: You also indicated that you found other paperwork in there?
>
> A: Right.
>
> Q: Now that other paperwork appeared to be legal mail; didn't it?
>
> A: I don't really remember what was written on there. I guess it would appear – would have appeared to be legal mail, but I wasn't really focused on the content on what was on the papers.

¶ 8. Steffes filed a motion to suppress the marijuana as evidence. He contended that Lieutenant Maxwell violated WIS. ADMIN. CODE § DOC 309.04(3)(a), which provides that institution staff may open mail received by an inmate that is "clearly identifiable" as being from an attorney only in the presence of the inmate. The violation of the rule, he argued, was a violation of his constitutional rights, and the remedy was suppression of the marijuana. The trial court

denied the motion, concluding that the issue was controlled by *State ex rel. Peckham v. Krenke*, 229 Wis. 2d 778, 601 N.W.2d 287 (Ct. App. 1999). Steffes filed a petition for leave to appeal the nonfinal order, which this court denied. He subsequently pleaded no contest to the charge of solicitation to deliver marijuana to a prisoner within a prison.

## DISCUSSION

¶ 9. On appeal Steffes renews his argument that the State obtained the marijuana illegally because Lieutenant Maxwell opened Steffes's mail outside his presence in violation of Wis. Admin. Code § DOC 309.04(3)(a), and this, Steffes contends, constitutes a violation of his Sixth Amendment right to counsel and his Fourteenth Amendment right against the deprivation of liberty without due process of law.[5] He acknowledges that, since there is no statutory or regulatory provision that evidence obtained in violation of the code is to be excluded in a criminal proceeding, he is not entitled to suppression of the marijuana unless it was obtained in violation of a constitutional right. *State v. Mieritz*, 193 Wis. 2d 571 574, 534 N.W.2d 632 (Ct. App. 1995).

■

¶ 10. On a motion to suppress evidence, a defendant generally bears the burden of producing evidence to support a constitutional violation, and the State then bears the burden of showing a constitutionally valid procedure by a preponderance of the evidence. *State v.*

---

[5] Steffes refers to a violation of the First Amendment, but does not develop an argument that is distinct from his argument on the Sixth Amendment. Therefore, we do not address the First Amendment.

*Noble*, 2002 WI 64, ¶ 19, 253 Wis. 2d 206, 646 N.W.2d 38. When we review a trial court's decision on a motion to suppress evidence, we affirm the court's findings of fact unless they are clearly erroneous, and we review de novo the application of constitutional principles to those facts. *State v. Vorburger*, 2002 WI 105, ¶ 32, 255 Wis. 2d 537, 648 N.W.2d 829.

*Sixth Amendment Right to Counsel*

¶ 11. Steffes argues that his Sixth Amendment right to counsel entitles him to be present when mail to him from his attorney is opened. He argues that Lieutenant Maxwell violated this right because the envelope he opened had a return address from the public defender's office, was marked "legal papers," and Lieutenant Maxwell testified that the papers in the envelope "would have appeared to be legal mail." Alternatively, Steffes argues that even if the envelope did not actually contain a communication from his attorney, he was still entitled under the Sixth Amendment to be present when it was opened. The State responds that Steffes's Sixth Amendment right to counsel was not violated because there is no evidence that his right to confidential communication with his attorney was interfered with. Since both parties find support for their positions in *Peckham*, 229 Wis. 2d 778, on which the trial court relied, we discuss this case in some detail.

¶ 12. In *Peckham*, an inmate appealed from a prison disciplinary decision on the ground that mail she had addressed to "Attorney-K Leslie" had been opened outside her presence in violation of WIS. ADMIN. CODE § DOC 309.05(4)(a) (which has since been renumbered to WIS. ADMIN. CODE § DOC 309.04(3)(a), with the rel-

evant language essentially unchanged). The inmate asserted that the evidence obtained from that mailing could not therefore be used against her in the disciplinary action. The inmate had sent the mail out of the prison, but it was returned to the prison due to an insufficient address and opened by prison staff outside her presence. Inside was correspondence between the inmate and a publishing company concerning a refund and replacement for some volumes she had received. *Id.* at 780.

¶ 13. We concluded in *Peckham* that, even though the mail did not actually contain correspondence to an attorney, opening and examining it outside the inmate's presence was a violation of the rule because the envelope was addressed to "Attorney-K Leslie." *Id.* at 785. However, we also concluded that suppression of the evidence obtained was not warranted because there was no statute specifically requiring suppression, and the evidence had not been obtained in violation of the inmate's constitutional rights. *Id.* at 794.

¶ 14. In reaching the conclusion that no constitutional right was violated, we surveyed decisions from other jurisdictions addressing the opening of incoming "legal mail," observing that they rested in part on the Sixth Amendment right to counsel and in part on the right of access to the courts guaranteed by the due process clause of the Fourteenth Amendment. *Id.* at 790–791 n.8.[6] We concluded that the jurisdictions were

[6] We first observed that the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 575–76 (1974), had not decided which, if any, of the constitutional rights there asserted —First Amendment, Sixth Amendment right to counsel, and the right of access to the courts guaranteed by the due process clause of the Fourteenth Amendment—were operative in the context of opening mail from an inmate's attorney; instead the

851

split over whether opening and inspecting incoming "legal mail" outside the presence of an inmate did violate the inmate's constitutional right. In those cases holding it did, we stated, there was an alleged pattern and practice of opening and inspecting legal mail outside the inmate's presence, and the mail opened and inspected actually was from the inmate's attorney, from a judge on a case in which the inmate was involved, or something similar. *Id.* at 790. Because the record before us in *Peckham* contained no evidence of such a pattern and practice and the communication was not between the inmate and her attorney, we concluded there was no violation of her constitutional rights. *Id.* at 791.[7]

¶ 15. Steffes contends that, unlike the facts in *Peckham*, here the envelope opened outside the inmate's presence did contain "legal mail." Although it is not entirely clear whether the trial court here found there was "legal mail" in the envelope, we will assume for purposes of our discussion that it did.[8] However, we

*Wolff* court had assumed that some constitutional right was implicated and decided none was violated if mail from an attorney was opened in the inmate's presence. *Peckham*, 229 Wis. 2d at 788–89.

[7] In reaching this conclusion in *Peckham*, we did not distinguish between the Sixth Amendment right to counsel and the Fourteenth Amendment due process right of access to the courts. Since Steffes does not present an argument based on the Fourteenth Amendment due process right of access to the courts, we address only the Sixth Amendment right to counsel.

[8] The trial court in its decision stated that the envelope in this case "did perhaps contain some legal mail," accepting Lieutenant Maxwell's testimony, but acknowledging his lack of certainty. The court then stated that although in this case, as in *Peckham*, there was no evidence of a pattern and practice, the

reject Steffes's assumption that documents that may be described as "legal mail" or "legal papers" are necessarily entitled to confidentiality under the Sixth Amendment right to counsel. The Sixth Amendment protects the attorney-client relationship from intrusion in a criminal matter. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). The need for an inmate to be able to communicate privately with his or her counsel is vital to the effective assistance of counsel. *See Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974). There are many documents that could be described as "legal mail" or "legal papers" that do not have any bearing on an inmate's relationship with his or her counsel in a criminal setting. One example that comes readily to mind is a document relating to a court proceeding when an in-

---

other factor present in *Peckham*—that the envelope did not contain any legal mail, "cannot be used in this case." The trial court nevertheless concluded that Steffes's constitutional right as framed by *Peckham* had not been violated because Lieutenant Maxwell was not sure the envelope contained legal mail, and the evidence sought to be used against Steffes was not legal mail but contraband drugs.

The State argues that Steffes's brother sent the envelope to Steffes and there was no legal mail of any kind in the envelope. Although this may be a reasonable inference from the record of the preliminary examination and the motion hearing, we cannot conclude it is the only reasonable inference, and the trial court did not make these findings. Since this court may not make findings of fact, we do not rest our decision on this ground urged by the State. We also observe that the State cites to allegations of the complaint to persuade us that Steffes's brother sent the envelope, but those allegations are not evidence on which the trial court may rely in deciding the motion to suppress evidence.

mate is proceeding pro se.[9] In order for the Sixth Amendment right to counsel to have an arguable application in this case, there must, as a threshold matter, be some evidence that the documents in the envelope were communications with Steffes's attorney or somehow related to an attorney's representation of Steffes in a criminal matter. However, there is no evidence in the record that the envelope contained any such documents.

██

¶ 16. Steffes's alternative argument in his reply brief—that his Sixth Amendment right to counsel was violated even if the documents in the envelope were not a communication from his attorney—has no merit. Steffes relies on *Peckham* for this argument, but *Peckham* stands for just the opposite: opening a letter outside of an inmate's presence may violate the administrative regulation, but it does not for that reason violate the Sixth Amendment right to counsel. Therefore, even if the opening of the envelope outside Steffes's presence violated WIS. ADMIN. CODE § DOC 309.04(3)(a), it is not for that reason a violation of his Sixth Amendment right to counsel.[10]

---

[9] We do not suggest such documents may not implicate other constitutional rights of an inmate, such as the Fourteenth Amendment due process right of access to the courts, nor do we suggest that such documents may not come within other subsections of WIS. ADMIN. CODE § DOC 309.04(3); our analysis at this point concerns only the Sixth Amendment right to counsel.

[10] Steffes also cites *Wolff* in support of his alternative argument, contending that the officials were required to ascertain whether a suspicious letter purporting to be from an attorney actually was and also were required to employ other methods to detect contraband. However, he cites to the portion

¶ 17. We conclude that Steffes's Sixth Amendment right to counsel was not violated by the opening of the envelope outside his presence.

*Fourteenth Amendment Due Process Right—Liberty Interest*

¶ 18. The Fourteenth Amendment protects against the deprivation of liberty without due process of law. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459–60 (1989). The first step in the analysis examines whether there exists a liberty or property interest that has been interfered with by the State; the second step examines whether the procedures attendant upon the deprivation were constitutionally sufficient. *Id.* at 460. The dispute in this case concerns the first step. Steffes contends that Wis. Admin. Code § DOC 309.04(3)(a) creates a liberty interest in not having mail identifiable as being from an attorney opened outside his presence, and that he was arbitrarily deprived of this liberty interest when Lieutenant Maxewell opened the envelope outside his presence in violation of this regula-

of *Wolff* summarizing the decision of the court of appeals. 418 U.S. at 575. The Supreme Court concluded that the approach of the court of appeals "was unworkable." *Id.* at 576. The Supreme Court held that no constitutional right was infringed by the procedure of opening mail from an attorney in the inmate's presence, requiring that any communication from an attorney be specially marked as originating from an attorney with his or her name and address, and requiring that an attorney who desired to correspond with a prisoner identify himself or herself and the client to the prison officials "to assure that the letters marked privileged are actually from members of the bar." *Id.* at 576–77.

855

tion.[11] He relies on *Hewitt v. Helms,* 459 U.S. 460, 471–72 (1983), for the proposition that a prison regulation that uses mandatory language may create a protected liberty interest, even though in the absence of the regulation there would not be a liberty interest protected by the Fourteenth Amendment.

¶ 19. However, the approach in *Hewitt* to identifying a liberty interest was abandoned in *Sandin,* 515 U.S. at 483–84 (1995), and we have already recognized this. *See, e.g., Kirsch v. Endicott,* 201 Wis. 2d 705, 715, 549 N.W.2d 761 (Ct. App. 1996); *Santiago v. Ware,* 205 Wis. 2d 295, 316–17, 556 N.W.2d 356 (Ct. App. 1996). The Court in *Sandin* stated:

> In light of the above discussion [on the limitations of the *Hewitt* approach] we believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns under girding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* [*v. McDonnell,* 418 U.S. 539 (1974)] and *Meachum* [*v. Fano,* 427 U.S. 215 (1976)]. Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. [Citation omitted.] But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to

---

[11] We will assume for purposes of our discussion that the opening of the envelope outside Steffes's presence did violate Wis. Admin. Code § DOC 309.04(3)(a). We do not agree with Steffes's assumption that there is no dispute there was a violation. It is arguable that an envelope with a taped on, typed return address of the State Public Defender's Office that does not contain a street address is not "clearly identifiable as being from . . . an attorney."

856

protection by the Due Process Clause of its own force [citations omitted], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* 515 U.S. at 483–84. The Court in *Sandin* went on to conclude that the disciplinary segregation the inmate there was subject to did not "present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486.

¶ 20. Steffes acknowledges *Sandin,* but contends that it did not overrule *Hewitt* but simply refined the analysis in *Hewitt.* Steffes refers to the footnote in *Sandin* accompanying the above cited passage:

Such abandonment of *Herwitt*'s methodology does not technically require us to overrule any holding of this court . . . . Although it did locate a liberty interest in *Hewitt,* it concluded that due process required no additional procedural guarantees for the inmate. As such, its answer to the anterior question of whether the inmate possessed a liberty interest at all was unnecessary to the disposition of the case. Our decision today only abandons an approach that in practice is difficult to administer and which produces anomalous results.

*Sandin,* 515 U.S. at 484 n.5.

¶ 21. Although the Court in *Sandin* did not find it necessary to overrule the holding in *Hewitt*—because the Court in *Hewitt* concluded there was no due process violation—it unmistakably abandoned the analysis in *Hewitt* that focuses on whether the language of a regulation is mandatory, and returned to the focus on the nature of the deprivation. *Sandin,* 515 U.S. at 481. Accordingly, the issue properly framed in this case is whether Wis. Admin. Code § DOC 309.04(3)(a) "provide[s] freedom from a restraint that 'imposes atypical

and significant hardship on [Steffes] in relation to the ordinary incidents of prison life.' " *Thielman v. Leean*, 282 F.3d 478, 482 (7th Cir. 2002), citing *Sandin*, 515 U.S. at 484.

¶ 22. Steffes argues that the regulation does meet this test because the right to be present during the opening of an inmate's legal mail is vital to the protection of an inmate's right to effective assistance of counsel, citing *Bach*, 504 F.2d at 1102. However, we have already concluded there is no evidence that the envelope contained documents that implicate this right. Moreover, Steffes's reliance on a Sixth Amendment analysis in this context is misplaced. The inquiry under the Fourteenth Amendment is whether the regulation created a protectible liberty interest, thus entitling the holder of the interest to the minimum procedures that are appropriate under the circumstances and necessary to insure the interest is not arbitrarily abrogated. *Wolff*, 418 U.S. at 556. If Steffes had the right under the Sixth Amendment to be present when Lieutenant Maxwell opened the envelope, he had that right regardless of the existence of the regulation. Stated another way, if his Sixth Amendment right to counsel were violated, it would not be because of the lack of procedure before the envelope was opened outside his presence, but because the envelope could not be opened outside his presence consistent with the Sixth Amendment, regardless of what procedure preceded it.

¶ 23. In the context of our Fourteenth Amendment analysis, the question is whether, in providing protection that is not required by the Constitution against intrusion into Steffes's receipt of mail, the regulation provides freedom from a restraint that imposes atypical and significant hardship on him in rela-

858

tion to the ordinary incidents of prison life. We have no hesitancy in concluding the regulation does not do this. Even if we assume that having mail addressed to an inmate opened outside the inmate's presence is a "restraint on freedom,"[12] restrictions and intrusions on the receipt of mail, other than that which is constitutionally proscribed, are typical of prison life. *See Wolff* at 575–77; *Turner v. Safley*, 482 U.S. 78, 86–91 (1987). In addition, it is not a significant hardship in relation to the ordinary incidents of prison life to have mail opened outside an inmate's presence when the mail purports to be from an attorney but is not. *See Pacheco v. Comisse*, 897 F. Supp. 671, 681 (N.D. N.Y. 1995) (variation from prison directive that sets standard for proving a letter is privileged does not involve freedom from restraint or impose atypical hardship).

---

[12] Wisconsin cases applying the *Sandin* standard have addressed challenges to various degrees and conditions of physical confinement, and we have found none of the following to constitute a restraint on freedom that is an atypical and significant hardship in relation to the ordinary incidents of prison life: placement in segregation under the Management Continuum program, *Kirsch*, 201 Wis. 2d at 711–14, 716–17; termination of assignment to a Community Residential Confinement program and return to Waupun Correctional Institution, *Santiago*, 205 Wis. 2d at 318; retention in adjustment segregation beyond the permitted maximum, *Chaney v. Renteria*, 203 Wis. 2d 310, 321, 554 N.W.2d 503 (Ct. App. 1996); transfer to an out-of-state facility, *Evers v. Sullivan*, 237 Wis. 2d 759, 615 N.W.2d 680 (Ct. App. 2000). In *Chaney*, the basis for our conclusion was that under *Sandin* we were to "focus on the physical characteristics of the confinement," and therefore "an inmate's confidence in the maximum time he or she will be specially segregated does not signal whether a protected liberty interest is involved." *Chaney*, 203 Wis. 2d at 320.

¶ 24. Accordingly, we conclude that Wis. Admin. Code § DOC 309.04(3)(a) does not create a liberty interest protected by the due process clause of the Fourteenth Amendment.

## CONCLUSION

¶ 25. Even if Lieutenant Maxwell violated Wis. Admin. Code § DOC 309.04(3)(a) by opening the envelope outside Steffes's presence, that did not violate Steffes's Sixth Amendment right to counsel, nor his Fourteenth Amendment right not to be deprived of liberty without due process of law. The trial court therefore properly ruled that he was not entitled to suppression of the marijuana found in the envelope.

*By the Court.*—Judgment affirmed.