STATE of Wisconsin, Plaintiff-Respondent,

v.

Joel D. RHODES, Defendant-Appellant.†

Court of Appeals

*No. 2010AP435–CR. Submitted on briefs February 8, 2011.
—Decided October 12, 2011.*

2011 WI App 145

(Also reported in 807 N.W.2d 1.)

† Petition for review denied 2/23/12.

594

On behalf of the defendant-appellant, the cause was submitted on the brief of *Christopher L. Hartley* of *Hartley Law Offices*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Michael C. Sanders*, assistant attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J.   Joel D. Rhodes appeals from a judgment, entered upon a jury's verdict, convicting him of one count of kidnapping and one count of aggravated battery, both as a party to a crime. *See* WIS. STAT.

§§ 940.31(1)(b), 940.19(5), 939.05 (2001–02).[1] He also appeals from an order denying his postconviction motion. Rhodes contends that he was denied his right to counsel by the trial court and by actions of Milwaukee County jail personnel. Because we conclude that Rhodes validly waived his right to counsel, the trial court did not erroneously exercise its discretion in denying his efforts to reinstate his right to counsel, and no actions by jail personnel interfered with his right to counsel, we affirm.

## I. BACKGROUND.

¶ 2. In 2002, the State charged Rhodes with two counts of kidnapping as a party to a crime. He retained Attorney Peter Kovac as trial counsel. A jury acquitted Rhodes of one kidnapping charge, but a different jury convicted him of the other charge. He challenged his conviction, arguing that Attorney Kovac was ineffective in several ways and that the State improperly removed a juror from the panel. The State confessed error as to the latter claim, and this court summarily reversed on that ground without reaching the other issues. The matter was remitted to the trial court in 2006.

¶ 3. After remittitur, the state public defender appointed Attorney Richard Kaiser to represent Rhodes, and the State filed an amended information to add an additional count of aggravated battery to the kidnapping charge. Attorney Kaiser advised the court that the retrial would take approximately five days to complete. The trial court scheduled the trial to begin on Monday, May 7, 2007.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 4. On March 13, 2007, Attorney Kaiser filed a motion to withdraw on the ground that Rhodes wished to proceed *pro se*. A hearing on the motion began on April 2, 2007, but the trial court adjourned the matter to permit Rhodes to discuss the issue further with Attorney Kaiser. On April 6, 2007, the trial court considered the motion on the merits and conducted a colloquy with Rhodes.

¶ 5. Rhodes told the trial court repeatedly that he wanted to represent himself. Towards the end of the colloquy, he also voiced an interest in retaining Attorney Kovac, who was in the courtroom at the time. The trial court immediately questioned Attorney Kovac. He stated that he could not serve as trial counsel because he had not been retained and because he had insufficient time to prepare. Rhodes then submitted a signed form showing that he wished to waive the right to counsel, and he stated again that he wanted to represent himself. The court granted Rhodes's motion to discharge counsel and proceed *pro se*.

¶ 6. No party moved to adjourn the trial date based on Rhodes's new status as a *pro se* litigant, and Rhodes's motion to discharge counsel included assurances that Rhodes would not seek an adjournment. Therefore, the trial court stated that the trial date remained May 7, 2007.

¶ 7. On April 18, 2007, Rhodes wrote a short letter to the trial court stating that he had "authorized Attorney Kovac to speak on [Rhodes's] behalf" and "to meet with [the court] and [the prosecutor] to discuss various issues." Rhodes added that if the trial court "agree[d] to such a meeting, it would not be necessary for [Rhodes] to be present." On April 24, 2007, Attorney Kovac filed a letter stating that Rhodes had asked Attorney Kovac to serve as trial counsel, but Attorney

Kovac also advised the court that "in good conscious [sic], I cannot be prepared to do a trial on May 7, 2007. It would [be] unethical and ineffective for me to try to handle [a] trial on that date." Attorney Kovac requested an adjournment of the trial date to enable him to prepare and appear as counsel of record. Rhodes did not sign or join this letter.

¶ 8.  On May 1, 2007, Rhodes filed a letter in the trial court describing problems with his trial preparation. Rhodes added that he had asked Attorney Kovac to "come in and assist" and that Rhodes had learned from Attorney Kovac that the trial court would not delay the trial. Rhodes concluded:  "April 06 I took over my case, that gave me a month to prepare for the four new witnesses the [S]tate has called. If possible, I am asking for the case to be post-pone[d]." The letter did not include a request to reinstate the right to counsel.

¶ 9.  Rhodes filed a third letter on Friday, May 4, 2007. He stated that he wanted Attorney Kovac to serve as trial counsel. Rhodes asked to adjourn the May 7, 2007 trial until some unstated future date to permit Attorney Kovac time to prepare.

¶ 10.  On the first day of trial, Attorney Kovac filed another letter, stating that he "remain[ed] willing to represent Rhodes at trial as soon as [Attorney Kovac] can ethically do so." Attorney Kovac also complained that Milwaukee County Jail personnel had prevented him from visiting with Rhodes throughout the preceding weekend, thus impeding Rhodes's trial preparation. Attorney Kovac asked the trial court not to "condone[]" that action, but he did not propose any specific remedy.

¶ 11.  Before jury selection began, the trial court addressed the various letters and requests submitted by Rhodes and Attorney Kovac, and the court also entertained Rhodes's oral motion to permit Attorney Kovac

to serve as stand-by counsel. The court denied Rhodes's effort to re-involve Attorney Kovac as either stand-by counsel or counsel of record. The court did, however, direct jail personnel to permit Attorney Kovac to meet with Rhodes.

¶ 12. During the second day of trial, Rhodes renewed his request to permit Attorney Kovac to serve as standby counsel, and, when the trial court refused, Rhodes moved to revoke his waiver of the right to counsel. The trial court declined to change its ruling.

¶ 13. On May 10, 2007, Attorney Kovac asked for permission to give the closing argument and indicated that Rhodes also wanted Attorney Kovac to examine the remaining witnesses. The trial court again refused to permit Attorney Kovac to appear as trial counsel but permitted him to sit with Rhodes at counsel table.

¶ 14. The jury convicted Rhodes of both kidnapping and aggravated battery. Rhodes moved for post-conviction relief on the ground that the trial court and jail personnel deprived him of his right to counsel. The trial court denied the motion without a hearing, and this appeal followed.

## II. Analysis.

¶ 15. On appeal, Rhodes asserts that: (1) the trial court erred by allowing him to waive his right to counsel; (2) the trial court erred again by refusing to reinstate his right to counsel; and (3) jail personnel denied him his right to counsel by prohibiting him from meeting freely with Attorney Kovac during the weekend preceding the trial. We address these claims *seriatim.*

## A. The trial court did not err in allowing Rhodes to waive his right to counsel.

¶ 16. A criminal defendant has a constitutional right to counsel and a corresponding constitutional right to proceed *pro se*. *See Faretta v. California*, 422 U.S. 806, 807 (1975). "Whether a defendant has knowingly, intelligently and voluntarily waived [the] right to counsel requires the application of constitutional principles to the facts of the case, which we review independent of the trial court." *State v. Klessig*, 211 Wis. 2d 194, 204, 564 N.W.2d 716 (1997).

¶ 17. A valid waiver of the right to counsel must include a colloquy in which the trial court examines the defendant on the record to ensure that he or she:

(1) [has] made a deliberate choice to proceed without counsel, (2) [is] aware of the difficulties and disadvantages of self-representation, (3) [is] aware of the seriousness of the charge or charges against him [or her], and (4) [is] aware of the general range of penalties that could . . . [be] imposed.

*Id.* at 206. The trial court must also determine that the defendant is competent to proceed *pro se*. *Id.* at 212. Rhodes's focus here is on the first of the necessary showings. He claims that his waiver of April 6, 2007, did not represent a "deliberate choice" because the trial court accepted that waiver and discharged Attorney Kaiser without sufficiently exploring Rhodes's wish to hire Attorney Kovac.

¶ 18. We reject Rhodes's claim. The trial court conducted a colloquy with Rhodes that the State aptly

describes as exemplary. During that colloquy, Rhodes assured the trial court that he understood that he had a right to a lawyer, and that he nonetheless wished to represent himself. He told the trial court that he was thirty-one years old, that he had never been treated for a mental illness, that he had a tenth-grade education, and that he could read and write. He demonstrated his understanding of the roles of a judge and a jury. He said that he had previously participated in two felony trials, that he had read case law and statutes, and that he had read the discovery provided by the State in this case. He acknowledged that an attorney might be better able than he to identify defenses and develop them at trial. He explained, however, that he had conferred with family members, acquaintances, and three attorneys about waiving his right to counsel, and he confirmed that "[t]his is not a rash decision." Rhodes stated that he had not been threatened or promised anything to induce him to give up his right to a lawyer and that he made the decision of his own free will.

¶ 19. The trial court reviewed the charges and the maximum penalties that Rhodes faced upon conviction. Rhodes said that he understood the charges and penalties and understood that any sentence imposed could be consecutive to any other sentence imposed at the same time or previously.

¶ 20. The trial court next reviewed with Rhodes the questions contained on a preprinted form used for waiving the right to an attorney. Rhodes again confirmed his knowledge of the charges and penalties that he faced, his understanding of the right to an appointed lawyer, and his education, literacy, and mental health. He repeated that he wanted to represent himself. The court then handed the form to Attorney Kaiser and directed him to review it with Rhodes. The court told

Rhodes to sign and file the form "if [he] still wish[ed] to proceed without a lawyer." Rhodes responded: "Judge, I want to say one more thing. I was in the process of hiring Attorney Kovac but I don't know what happened. He [is] here in the courtroom today."

¶ 21. The trial court immediately questioned Attorney Kovac on the record. He told the court that he had not been retained and that he did not represent Rhodes. Attorney Kovac explained that he had "two concerns" preventing him from serving as trial counsel, that one concern was "financial," and that the other was his belief that he could not be prepared for a trial starting on May 7, 2007.

¶ 22. Rhodes then gave the trial court the signed Waiver of the Right to an Attorney. The court questioned Rhodes about whether he had signed the form after discussing it with his counsel, and Rhodes confirmed that he had done so. The court asked Rhodes again whether he wished to represent himself, and Rhodes said "yes." The court asked Rhodes why he wanted to represent himself, and Rhodes replied, "[b]ecause I think that I can better defend myself in this case."

¶ 23. The trial court next made detailed findings that Rhodes was competent to represent himself, and that he had made a deliberate choice to proceed without counsel. The court found that he understood the proceedings, the nature and seriousness of the charges, the penalties that could be imposed, and the disadvantages of self-representation. Accordingly, the court granted Rhodes's request and ruled that "he may represent himself in this case."

¶ 24. The record fully supports the trial court's conclusion that Rhodes made a deliberate choice to proceed *pro se*. The choice to proceed *pro se* is not

deliberate when it is "impulsive[]" or "hasty." *See State v. Imani*, 2010 WI 66, ¶ 28, 326 Wis. 2d 179, 786 N.W.2d 40. Here, Rhodes explained that he discussed the issue with numerous advisers, and that the decision was not a rash one. Indeed, Rhodes filed the motion to permit self-representation three weeks before the trial court first addressed the issue, and the trial court adjourned the hearing to allow him to explore any lingering concerns with his appointed counsel. Rhodes plainly had ample opportunity to consider and reconsider how he wished to proceed. Thus, we cannot agree with Rhodes that the trial court should have conducted any further inquiry about his discussions with Attorney Kovac before concluding that Rhodes made a deliberate choice to represent himself.

¶ 25. Further, the trial court is not required to use " 'magic words' " during an inquiry under *Klessig* when "the reality of the circumstances dictate[s] the answer." *See Imani*, 326 Wis. 2d 179, ¶ 26. In this case, although Rhodes mentioned the possibility of hiring Attorney Kovac during the waiver colloquy, Attorney Kovac immediately disclosed that he had not been retained and that he was not willing to be retained for a trial starting on May 7, 2007. Rhodes, however, expressly disavowed any wish for an adjournment when moving to proceed *pro se*. Thus, retaining Attorney Kovac simply was not a viable option. Moreover, after the trial court questioned Attorney Kovac on the record, Rhodes stated that he wanted to proceed *pro se* because he thought he could "better represent himself." The record unequivocally reflects that Rhodes knowingly, intelligently, and voluntarily waived the right to counsel.

*B. The trial court did not err by denying Rhodes's efforts to reinstate the right to counsel.*

¶ 26. We turn to the claim that the trial court erred by denying Rhodes's efforts to reinstate the right to counsel. Neither Rhodes nor the State points to controlling Wisconsin authority on this issue.

¶ 27. We begin by determining the standard of review. We agree with the parties' joint position that a defendant's request to withdraw from self-representation and proceed with the assistance of counsel rests in the trial court's discretion. First, other jurisdictions have squarely reached this conclusion. *See, e.g., State v. Leveto*, 540 F.3d 200, 207 (3d Cir. 2008) ("we are persuaded by the broad consensus of other courts that the consideration of a defendant's post-waiver request for counsel is well within the discretion of the district court"), and cases cited therein. Second, a request to reinstate the right to counsel is akin to a request for substitution of counsel. *See United States v. Merchant*, 992 F.2d 1091, 1095 (10th Cir. 1993). We review decisions to allow or deny a substitution of counsel for an erroneous exercise of discretion. *See State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988). Accordingly, we apply that standard here.

¶ 28. When we consider whether the trial court properly exercised its discretion, "we examine the record to determine if the trial court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach." *State v. Wanta*, 224 Wis. 2d 679, 689, 592 N.W.2d 645 (Ct. App.

1999). Our review under this standard is deferential. *See State v. Allen*, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶ 29.  Rhodes argues, however, that little deference is due in this case. He asserts that a trial court may exercise its discretion to deny reinstatement of the right to counsel only in limited circumstances. In his view, reinstatement must be granted unless the record shows "an apparent effort to delay or disrupt proceedings on the eve of trial, or once trial is well underway." *See United States v. Proctor*, 166 F.3d 396, 402 (1st Cir. 1999). *Proctor*, of course, is not binding on us, and we do not agree that the trial court's exercise of discretion is so narrowly circumscribed.

¶ 30.  While courts "have a strong interest in safeguarding a defendant's access to professional legal representation, other factors necessarily play an important role in a . . . court's deliberation of a post-waiver request for counsel." *Leveto*, 540 F.3d at 207 (citation omitted). Thus, cases reflect "wide agreement that, once waived, the Sixth Amendment right to counsel is no longer absolute." *See id.*, citing *United States v. Solina*, 733 F.2d 1208, 1211–12 (7th Cir. 1984); *Menefield v. Borg*, 881 F.2d 696, 700 (9th Cir. 1989); *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982); *Merchant*, 992 F.2d at 1095; and *United States v. West*, 877 F.2d 281, 286 (4th Cir. 1989).

¶ 31.  Courts generally give weight to the timing of an effort to revoke self-representation, "particularly where, as is the case here, the timing of the motion is part and parcel with the consideration of whether disruption would result if the motion was granted." *See Leveto*, 540 F.3d at 210, and cases cited therein. Thus,

"as the trial date draws nearer, the . . . court can and should consider the practical concerns of managing its docket and the impact that a request may have on its general responsibilities for the prudent administration of justice." *Id.* at 207. Similarly, a trial court should consider the timeliness of a request for substitution of counsel. *See Lomax,* 146 Wis. 2d at 361. "Eleventh-hour requests are generally frowned upon as a mere tactic to delay the trial." *Id.* at 361–62. We conclude that the timing of Rhodes's request to terminate his self-representation is a significant factor.

¶ 32. The parties disagree, however, as to precisely when Rhodes raised the issue of reinstating his right to counsel. Rhodes asserts that he did so "about two weeks prior to the trial date." He apparently refers to Attorney Kovac's letter of April 24, 2007, which included a request to adjourn the May 7, 2007 trial to permit Attorney Kovac to represent Rhodes. The State argues, however, that Attorney Kovac had no active relationship to the litigation in April 2007 and thus could not raise an issue in the case. In the State's view, the relevant event is Rhodes's *pro se* letter filed on Friday, May 4, 2007, in which Rhodes stated that he wanted counsel and asked to delay the trial to permit Attorney Kovac to reenter the case.

¶ 33. We agree with the State. A defendant has no right to representation by counsel at the same time that he or she is self-represented. *Robinson v. State,* 100 Wis. 2d 152, 165, 301 N.W.2d 429 (1981). Upon waiving the right to counsel, Rhodes could not rely on actions taken by an attorney and claim that those actions were his own.

¶ 34. Because Rhodes disclosed that he wanted to reinstate his right to counsel by letter filed on the

609

Friday preceding the start of the trial, the trial court first had an opportunity to address the issue on the day that the trial began. At that time, the trial court observed that "at least 12 or 14 witnesses" were waiting to testify, that many of the witnesses were inmates, some of them were in federal custody, and that they had been brought to the Milwaukee County courthouse from other jurisdictions. Moreover, the parties had previously estimated that the trial would consume approximately one week of court time. Plainly, an adjournment to permit the involvement of an attorney who concededly was not yet prepared to try the case would have had a significant impact on court administration, calendar management, and witness availability. The trial court could properly give weight to these considerations. *See Lomax*, 146 Wis. 2d at 362; *see also Leveto*, 540 F.3d at 210 (" 'the scheduling problems the continuances would have caused were in themselves sufficient ground for refusing to delay the trial.' ") (citation omitted). Our supreme court has long cautioned:

> an accused must not be permitted to manipulate the right of counsel to delay the orderly procedures for trials or interfere with the administration of justice .... As a result of the significant adverse effect that last-minute requests can have on the judicial system, we have directed [circuit] courts to balance the defendant's right to adequate representation against the public interest in the prompt and efficient administration of justice.

*State v. Kazee*, 146 Wis. 2d 366, 372–73, 432 N.W.2d 93 (1988) (citations omitted).

¶ 35. The trial court did not, however, base its decision solely on administrative concerns engendered

by the timing of Rhodes's efforts to reinstate the right to counsel. Rather, the court also considered the specifics of Rhodes's request. We note that a trial court generally must conduct an inquiry when a defendant requests substitution of counsel and must determine the basis for the request. *See State v. McDowell*, 2004 WI 70, ¶ 71, 272 Wis. 2d 488, 681 N.W.2d 500. Similarly, the *Leveto* court observed that a defendant's request for reinstatement of counsel should normally trigger an inquiry to ensure the integrity of the trial proceedings and enable appellate review. *See id.*, 540 F.3d at 209. Both *McDowell* and *Leveto* reflect that the scope of the inquiry depends on the state of the record. *See McDowell*, 272 Wis. 2d 488, ¶ 71; *Leveto*, 540 F.3d at 209. Moreover, the court's knowledge of the totality of the circumstances is relevant in assessing the sufficiency of the inquiry. *See Leveto*, 540 F.3d at 209.

¶ 36. Rhodes asserts that the trial court did not conduct a sufficient inquiry but instead "rejected Rhodes's request out of hand." We cannot agree. The May 7, 2007 transcript reflects a thorough review of the request to reinstate counsel before trial began. The trial court explored not only the letters filed by Rhodes and Attorney Kovac during the weeks immediately preceding the trial date but also the related requests and explanations offered on the record as the inquiry progressed.

¶ 37. The trial court first reviewed the circumstances of its original decision granting Rhodes's motion to proceed *pro se* and, in this context, the court considered whether Rhodes remained competent to represent himself. *See Pickens v. State*, 96 Wis. 2d 549, 569, 292 N.W.2d 601 (1980), *overruled on other grounds by Klessig*, 211 Wis. 2d at 206 (noting trial court's ongoing obligation to ensure defendant is capable of

self-representation). The court explained why it had continuing confidence in Rhodes's competence:

> I read again [Attorney] Kaiser's motion on that – how skilled you were, how capable you were, how you had obviously been involved in the first trial and certainly are capable of representing yourself; I have also learned that you have written a book and it's been published .... I certainly think that goes to show how capable you are.[2]

¶ 38. The trial court then turned to Rhodes's request for relief from self-representation. Rhodes told the court that he wanted counsel because "nobody respect[s] you when you go[] *pro se*. They think that's arrogant." The court emphasized that Rhodes was not merely moving to revoke his waiver of the right to counsel but was seeking to involve a specific lawyer. In this regard, the court noted that Rhodes had challenged Attorney Kovac's effectiveness when Rhodes appealed the conviction that followed his first trial. The court summarized Rhodes's claims against Attorney Kovac and deemed them "significant." The trial court also emphasized the assertions by Attorney Kovac that he could not perform effectively at a trial commencing on May 7, 2007, because he lacked adequate time to prepare. The court described Rhodes's efforts to involve Attorney Kovac as trial counsel in light of his past history in the case and his ongoing assertions of unreadiness as "eccentric" and "bizarre."

¶ 39. As the inquiry progressed, Rhodes denied that he wanted an attorney. He said that he wanted a computer for trial preparation. After the trial court

---

[2] Attorney Kovac's letter of April 24, 2007, disclosed that Rhodes wrote a book while incarcerated that "has been picked up by [a] commercial publisher."

explained that it did not provide computers for litigants, Rhodes asked the court "to let [Attorney] Kovac be [] stand-by counsel." The court refused, stating: "[y]ou represented in your appellate papers that [Attorney] Kovac was ineffective . . . . He indicated that he would not be prepared to try this case and now you are telling me you want him to act as stand-by. I'm not going to allow it under these circumstances." The trial court determined that "there are games going on here" and that it "[was] not going to put up with" those games.

¶ 40.   The record amply supports the trial court's finding that Rhodes was engaged in gamesmanship over his representation. Rhodes waived his right to counsel on April 6, 2007, stating that he was prepared for trial and could proceed on the scheduled trial date of May 7, 2011. Nonetheless, as that deadline closed in, he told the trial court that he wanted:   (1) Attorney Kovac to represent him; (2) to represent himself with Attorney Kovac serving as stand-by counsel; and (3) no lawyer, just a computer. The trial court was incapable of satisfying all of Rhodes's mutually exclusive requests. A defendant cannot rely on the right to counsel as a mechanism for imposing impossible duties on the trial court. *See State v. Woods*, 144 Wis. 2d 710, 714, 424 N.W.2d 730 (Ct. App. 1988). Moreover, a litigant may not abuse the right to counsel "by repeatedly altering his position on counsel to achieve delay or obstruct the orderly administration of justice." *United States v. Pollani*, 146 F.3d 269, 273 (5th Cir. 1998).

¶ 41.   The trial court revisited the issue of Rhodes's representation on the second day of trial. Rhodes demanded to know why Attorney Kovac could not serve as "side counsel," and Rhodes then told the

trial court: "I revoke myself to represent myself in this case 'cause I am not doing what I [am] suppose[d] to do in this case . . . . I'm not representing myself right. I thought I could. I went through the trial yesterday. I found out I couldn't. So I feel like I have the right to say I revoke the right to represent myself."[3]

¶ 42. The trial court declined to change its ruling. The court found that Rhodes was "trying to cloud the record by this issue with [Attorney] Kovac." The trial court reiterated that Rhodes accused Attorney Kovac of providing ineffective assistance in the first trial, and the court again concluded that "the defendant is trying to manipulate the record by what he is doing in terms of his representation."

¶ 43. A trial court may err by denying a request to revoke *pro se* status when the denial is merely to punish the defendant or is based on " 'a rigid insistence on expedition in the face of a justifiable request for delay.' " *See Leveto*, 540 F.3d at 208 n.5 (citation omitted). Here, however, the trial court concluded that Rhodes was attempting to affect the proceedings adversely by inserting a lawyer into the case who was concededly unprepared and who Rhodes previously challenged as constitutionally ineffective. A trial court does not erroneously exercise its discretion by preventing a defendant from reasserting the right to counsel merely to hinder the progress of the case against him. *See State v.*

---

[3] We note Rhodes's express acknowledgement that he "thought he could represent himself" at the time that he waived the right to counsel, and we observe that this acknowledgement undermines his contention, discussed earlier, that he did not make a "deliberate choice" to proceed *pro se.*

*Richardson*, 304 S.W.3d 280, 289 (Mo. Ct. App. 2010); *see also Kazee*, 146 Wis. 2d at 372–73 (discussing substitution of counsel).

¶ 44. On May 10, 2007, the fourth day of trial, Attorney Kovac sought leave to give the closing argument, and he stated that Rhodes also wanted Attorney Kovac to examine the remaining witnesses. The trial court denied the requests. It explained that involving Attorney Kovac as counsel of record "still boils down to the fact that [he had] represented to the Court that [he] cannot be effective."

¶ 45. Although Attorney Kovac claimed that Rhodes would waive any potential future claims of ineffective assistance of counsel, "[a] defendant does not have a constitutional right to choreograph special appearances by counsel." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). Moreover, a court has institutional interests in ensuring that criminal trials are conducted within the ethical standards of the legal profession and that legal proceedings appear fair to all observers. *State v. Miller*, 160 Wis. 2d 646, 653 n.2, 467 N.W.2d 118 (1991), citing *Wheat v. United States*, 486 U.S. 153, 160 (1988). In light of these institutional interests, the trial court reasonably exercised its discretion by barring Attorney Kovac from formally reentering this case mid-trial after his assurances that his appearance in that very trial would be "unethical and ineffective."

¶ 46. The trial court explained why it would not permit Rhodes to withdraw his waiver of the right to counsel. It considered Rhodes's various requests in light of the totality of the circumstances and used a "demonstrated rational process to reach a conclusion that a

reasonable judge could reach." *See Wanta*, 224 Wis. 2d at 689. Thus, the trial court properly exercised its discretion.

*C.  County jail personnel did not deprive Rhodes of his right to counsel.*

¶ 47.  We turn last to the claim that Rhodes suffered a deprivation of the right to counsel when Milwaukee County Jail personnel prevented him from visiting with Attorney Kovac during the weekend before trial began. In support of the claim, he cites *Geders v. United States*, 425 U.S. 80 (1976), and *State v. Steffes*, 2003 WI App 55, 260 Wis. 2d 841, 659 N.W.2d 445. The State contends that these cases are inapposite. We agree.

¶ 48.  In *Geders*, a judge improperly barred the defendant from speaking to his attorney of record during an overnight trial recess. *See id.*, 425 U.S. at 91. Here, however, Attorney Kovac was not counsel of record. Further, the trial court did not bar him from having contact with Rhodes, and when Rhodes complained about limitations on his contact with Attorney Kovac, the court directed jail personnel to permit visits. *Geders* is inapplicable.

¶ 49.  In *Steffes*, we denied a claim that jail personnel violated an inmate's right to counsel by opening an envelope in the inmate's absence when the envelope was marked " 'legal papers.' " *Id.*, 260 Wis. 2d 841, ¶¶ 1–2. Rhodes cites *Steffes* for the proposition that an inmate's ability "to communicate privately with his or her counsel is vital to the effective assistance of counsel." *Id.*, ¶ 15. Rhodes fails to explain, however, how this proposition aids his claim that jail personnel deprived him of a right to counsel that he had already waived.

¶ 50.   Rhodes presented only two paragraphs of argument on this issue in his appellate brief. He filed no reply brief and thus did not respond to the State's contentions that his authority was not on point and that his claim of error was inadequately explained. We deem the State's points conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 108–09, 279 N.W.2d 493 (Ct. App. 1979). Accordingly, we consider this issue no further. We do not address arguments that are insufficiently briefed and offered without adequate supporting authority. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992).

*By the Court.*—Judgment and order affirmed.