COURT OF APPEALS
DECISION
DATED AND FILED

**January 13, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2021AP1868**
**2021AP1869**
STATE OF WISCONSIN

Cir. Ct. Nos. 2019TP68
2019TP69

IN COURT OF APPEALS
DISTRICT IV

---

NO. 2021AP1868

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. F.,
A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

J. F.,

RESPONDENT-APPELLANT.

---

NO. 2021AP1869

IN RE THE TERMINATION OF PARENTAL RIGHTS TO L. F.,
A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

**V.**

**J. F.,**

    **RESPONDENT-APPELLANT.**

---

        APPEALS from orders of the circuit court for Dane County: JUAN B. COLÁS, Judge. *Affirmed*.

    ¶1    BLANCHARD, P.J.[1]  J.F. appeals circuit court orders involuntarily terminating her parental rights to A.F. and L.F.  J.F. argues that the court erred in denying her request to delay the grounds trial for the purpose of allowing her to be appointed new counsel, thus requiring her to proceed at trial with assistance from originally appointed counsel.  I conclude that the circuit did not erroneously exercise its discretion in denying the request and accordingly affirm.

## BACKGROUND

    ¶2    In October 2019, Dane County petitioned to terminate J.F.'s parental rights to A.F. and L.F.  As part of the same action, the County also petitioned to terminate the parental rights regarding the same children held by their father, A.D. The petition alleged as grounds for termination that both J.F. and A.D. failed to assume parental responsibility for the children.  *See* WIS. STAT. § 48.415(6).

    ¶3    In December 2019, the state public defender's office appointed counsel and she would represent J.F. throughout the proceedings pertinent to this

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

appeal, up to and including a fact-finding hearing to determine if grounds existed to terminate J.F.'s parental rights (the "grounds trial"). *See* WIS. STAT. § 48.424; *see also State v. C.L.K.*, 2019 WI 14, ¶3, 385 Wis. 2d 418, 922 N.W.2d 807 (if factfinder determines grounds exist to terminate parental rights, "'the court shall find the parent unfit'" and proceed to a dispositional phase (quoted source omitted)).

¶4      The grounds trial in June 2021 was expected to last four days. On the morning of the first day of trial, the circuit court noted that, in speaking in court before the parties were on the record, J.F. had requested the opportunity for appointment of a new attorney to replace her originally appointed attorney. This would naturally have necessitated delaying the trial. The court questioned J.F. about her request and then denied it. I provide additional detail below about the court's inquiry and its reasoning in denying the request.

¶5      Following denial of J.F.'s request for new counsel the parties proceeded with the grounds trial without a jury.[2] The circuit court determined that the County proved the grounds for terminating parental rights alleged in the petition based on clear and convincing evidence. On this basis, the court ruled that

---

[2] I note the following as background necessary to understand one set of arguments made by J.F. But, as explained *infra* at ¶26, J.F. is incorrect in arguing that this background is pertinent to the only issue she raises on appeal.

During trial, J.F. told the circuit court that she questioned whether her counsel was on J.F.'s "team," because counsel was (according to J.F.) failing to raise viable objections to the testimony of witnesses called by the County and failing to cross-examine those witnesses along lines beneficial to J.F.'s case. Given this criticism, the circuit court allowed J.F. to participate in what amounted to a hybrid form of advocacy with her attorney. J.F. was allowed to make additional objections and directly cross-examine witnesses. J.F. does not challenge the circuit court's decision to allow J.F. and her counsel to use hybrid representation at trial.

J.F. was unfit to be a parent. At the dispositional hearing the court terminated J.F.'s parental rights. J.F. appeals.

## DISCUSSION

¶6      The only issue on appeal is whether the circuit court erroneously exercised its discretion in denying J.F.'s request to delay the grounds trial and grant her the opportunity to be appointed new counsel, a request that she made for the first and only time on the morning of the first day of the scheduled grounds trial just before the trial commenced.

¶7      Parents appearing before the court in proceedings to address a petition for the involuntary termination of parental rights have the right to be represented by counsel. *See* WIS. STAT. § 48.23(2)(b). Parents such as J.F. are entitled to appointed counsel. *See* § 48.23(4)(b); WIS. STAT. § 977.08(1).

¶8      Appellate review of a circuit court decision in this area is deferential. "Whether trial counsel should be relieved and a new attorney appointed is a matter within the circuit court's discretion." *State v. Jones*, 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378; *see also State v. Boyd*, 2011 WI App 25, ¶8, 331 Wis. 2d 697, 797 N.W.2d 546 (defendants may not select the lawyers who are appointed, but "have the right to a lawyer with whom he or she can communicate effectively").[3]  "This court will sustain the circuit court's decision if the court

---

[3] Following a shared assumption of the parties, I assume without deciding that the discussion in *State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988), and subsequent case law regarding a *criminal defendant*'s request to substitute appointed counsel applies in an analogous fashion to the same request made by a *respondent-parent*, such as J.F., in proceedings on a petition to terminate parental rights under WIS. STAT. ch. 48. *Cf.* WIS. STAT. § 977.08(1) (state public defender assigns counsel to parents referred under WIS. STAT. § 48.23(4); if "a *defendant*" requests a "change of attorney assignment," the circuit court must approve the request (emphasis added)).

(continued)

4

'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" ***Jones***, 326 Wis. 2d 380, ¶23 (quoted source omitted). Our supreme court has explained that review of a circuit court decision to deny a request to substitute counsel depends on factors that include the following:

> "(1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case."

***Id.***, ¶25 (quoting ***State v. Lomax***, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988)). Circuit courts may also "properly give weight" to the considerations of "court administration, calendar management, and witness availability" that are implicated given the additional time needed for new counsel to be appointed and to prepare for trial. *See* ***State v. Rhodes***, 2011 WI App 145, ¶34, 337 Wis. 2d 594, 807 N.W.2d 1.

---

Although J.F. generally bases her arguments on the ***Lomax*** factors, she may mean to suggest that the factors must be given a strict pro-parent interpretation in cases of this type, at least regarding the timing factor. I reject any such intended argument as undeveloped. I now explain further. In a similar vein to other timing arguments that J.F. makes addressed in the text below, J.F. argues that the "gravity" of the constitutional interests at stake in severing parental rights here outweighed the potential for inconvenience that would have resulted from granting her last-minute request. It is true that termination of parental rights cases implicate significant constitutional rights of the parents involved. *See* ***Brown Cnty. DHS v. Brenda B.***, 2011 WI 6, ¶¶29-30, 331 Wis. 2d 310, 795 N.W.2d 730 (termination of parental rights proceedings implicate constitutionally protected and "fundamental liberty interest"); ***Sheboygan Cnty. DHS v. Julie A.B.***, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402 (during the grounds phase, "'the parent's rights are paramount,'" meaning "the burden is on the government, and the parent enjoys a full complement of procedural rights" (quoted source omitted)). However, J.F. does not develop a supported argument that the rights implicated for parents in her litigation posture are more expansive than the analogous rights for criminal defendants.

¶9 Citing the ***Lomax*** factors here, J.F. argues that the circuit court erroneously exercised its discretion in denying her request to delay the grounds trial to allow her the opportunity to be appointed new trial counsel. J.F. contends that the court did not adequately inquire specifically into J.F.'s relationship with her attorney. Had it done so, the argument continues, the court would have become aware of what she submits would later become obvious at trial: J.F.'s relationship with her attorney had completely broken down. J.F. specifically contends that J.F.'s words and actions during trial demonstrated J.F.'s lack of confidence in her counsel and that the hybrid approach that the court permitted substantially prejudiced her defense. Based on these arguments, J.F. requests as relief that this court vacate the judgments and orders terminating J.F.'s parental rights and either grant her a new grounds trial or, in the alternative, remand for a hearing to allow her to more fully explain her reasons for wanting new counsel. *See* ***Lomax***, 146 Wis. 2d at 365 ("When a trial court has not made an adequate inquiry into a defendant's last-minute request to discharge appointed counsel, a retrospective hearing, at which the defendant may present whatever he deems necessary to fully articulate his reasons for wanting counsel discharged, strikes a proper balance between the constitutional rights of defendants and the efficient administration of justice.").

¶10 The County argues the circuit court reasonably exercised its discretion. The County emphasizes that the court repeatedly questioned J.F. regarding the reasons for her request and that in response J.F. primarily identified the timing of the grounds trial as her main concern. The County contends that the timing of J.F.'s request weighs heavily in assessing the circuit court's discretionary decision not to grant it. Further, the County argues that there was no

allegation of any conflict between J.F. and her counsel at the time of the court's challenged decision.[4]

¶11   I agree with the County on all these points and affirm.  To explain my conclusion further, I now provide additional background into the court's inquiry and reasoning, and then address the ***Lomax*** factors.

¶12   When J.F. raised her request for new counsel on the first morning of the scheduled multi-day grounds trial, the circuit court asked J.F. to explain specifically what she was requesting.  J.F. began her response saying "I just would like a new attorney," but then immediately veered into a discussion of the timing of the trial.  She said that she "was trying to prevent this [trial] from happening as soon as it did."  She acknowledged that she had initially requested a separate grounds trial from A.D.'s grounds trial, but said that she would prefer for the court to consolidate the case if that meant "push[ing] the court date [for her grounds trial] further" into the future.[5]

---

[4] Separately, the County argues that J.F.'s explicit request for new counsel did not represent a "substantial complaint" regarding her current counsel such that the court was obligated to inquire further into whether new counsel should be appointed.  *See **State v. McDowell***, 2004 WI 70, ¶66, 272 Wis. 2d 488, 681 N.W.2d 500 (explaining that a circuit court's exercise of discretion, including its inquiry into a defendant's request for new counsel, is "triggered by [the] defendant's presentation of a substantial complaint").  I assume without deciding that J.F.'s request constituted a "substantial complaint" warranting inquiry by the circuit court, and as explained in the text I view the circuit court's inquiry as having been a complete and appropriate response to the assumed substantial complaint.  *See **State v. Kazee***, 146 Wis. 2d 366, 371-72, 432 N.W.2d 93 (1988) (defendant told circuit court only "I don't want him" in reference to his appointed counsel, which was a statement that in context "could reasonably be interpreted as a request for new counsel" warranting the circuit court's exercise of discretion consistent with ***Lomax***).

[5] The circuit court held a final pre-trial conference three weeks before the scheduled grounds trial.  Topics discussed included J.F.'s expressed preferences to delay the grounds trial as long as possible and to have the court serve as the factfinder, not a jury.  *See* WIS. STAT. §§ 48.31(2), 48.424(2).

7

¶13    The colloquy proceeded as follows:

THE COURT:  But didn't we talk about [whether to hold separate trials for each parent] on May 13ᵗʰ at the final pre-trial whether the fact that you wanted a court trial instead of—

[J.F.]:  Yeah.  … [W]e talked about it but, you know, we already had this arranged … that you … were going to be the judge for my trial and that I wasn't going to have a jury.  But it was already arranged at a later date ….  So I feel like if I wouldn't have made that comment and I think that if my attorney would have stuck up for me a little bit more—and really, you know, I guess it's not [J.F.'s attorney's] fault.  I don't know why I didn't speak up for myself.  I don't know, but that's—that's what I want.

THE COURT:  … [S]o the reason you want [a new] attorney is because you want to have your trial at the same time as [A.D.] in October [2021]?

[J.F.]:  I want to have …. [a] later date, yep.

THE COURT:  Well, that's two different things.  You're saying you want a later date.  Are you saying you want to have your trial at the same time as [A.D.]?  Because I thought you were opposed to having the trial with [A.D.] because there's a no-contact order.

[J.F.]:  A later … date.…

THE COURT:  Okay.  And can you tell me why?

[J.F.]:  I'm just trying to prevent this from happening because I don't know what the outcome is going to be.

THE COURT:  Right but that's going to be true whether you have the trial today or whether you have the trial [in] six months or now, you don't know what the outcome's going to be.

[J.F.]:  Yeah, but at least I have more time to get some more evidence and stuff like that…. [C]ommunication wise sometimes with my attorney, it's … okay, you know, but I feel like even for [the final pretrial conference three weeks earlier] I had missed a visit that day.  And I feel like if she would have … just told me from the beginning like, hey, you know, the court hearing could

8

be this amount of time, etc. So then I could have planned ahead to arrange a different visit that day. Instead, I had to miss a visit. But I guess, you know, it's [my] fault too. I should have asked that question from the beginning. I just didn't think about it…. I assumed that if the court hearing was … going to take [an] amount [of time] that I would have known that from the beginning—

THE COURT: I don't think—

….

—any of us predicted that that hearing on May 13th was going to take three hours.

….

THE COURT: I thought it [would] take an hour at the most.

[J.F.]: That's what I assumed…. That's why—

THE COURT: So your attorney couldn't have told you in advance because I didn't know in advance how long that hearing was going to take.

[J.F.]: Yeah. [S]he did tell me this, but she didn't tell me this until I asked her, which was like—I don't know the date prior. But if she would have told me that from the beginning and what she said was, hey, [J.F.], I've known hearings to last this amount of time and I've known hearings like this to last this amount of time, at least then it would gave me some kind of recollection to think to be like, okay, to plan ahead, you know, accordingly.

THE COURT: But as far as having the trial today, … the length of that hearing, doesn't … really affect anything today.

¶14 Regarding the last point by the circuit court, this involved J.F.'s suggestion that counsel had allegedly failed to accurately predict in advance for J.F. the length of the final pretrial conference. On this topic, J.F. appeared to acknowledge that this alleged prediction failure did not affect any aspect of the grounds trial proceedings. J.F. went on to briefly express concern about again having to miss a visit with her children because of the scheduled length of the

9

grounds trial, but this time without explicitly connecting this concern to her relationship with, or any communications she had, with her counsel.

¶15     Following her comments regarding missing visits, J.F. said, "I'm just hoping that I can just get another attorney and then—I just need another attorney." In response the court asked whether this was "[b]ecause you want more time … that's the reason you want another attorney because you want to delay the trial?" J.F. answered that she "[did]n't want to delay" the trial, but that she did "need a little bit more time."

¶16     The circuit court noted that in the two years since the County filed its petition, J.F. had "said nothing about wanting another attorney," including at the final pretrial conference three weeks earlier. J.F. confirmed this. She said that she had been unaware that she could have a different attorney appointed. The court asked when J.F. realized she wanted another attorney, and she answered "[a] while ago." J.F. further said that she told only her attorney in separate CHIPS proceedings about desiring a new attorney in the instant case. She said that she "[did]n't know why" she waited until the day of trial to raise the issue; she said she thought that "maybe things would change."

¶17     J.F.'s counsel said that she was prepared to proceed with representing J.F. at trial. Counsel also took the position that, given the significance of J.F.'s rights at stake, the circuit court had a "right to reappoint" new counsel "[at] will."

¶18     The County opposed J.F.'s request, arguing in part that it came too late and would be prejudicial to the County given that the County had arranged to call 18 trial witnesses. The guardian ad litem also opposed J.F.'s request based on the best interests of the children in moving the case forward "as quickly as

possible" after more than two years of delay. The guardian ad litem also contended that, based on J.F. having requested new counsel in earlier CHIPS proceedings, J.F. was aware that she could have requested new counsel in this case at an earlier time.

¶19 The court denied J.F.'s request on multiple grounds. The court found that J.F.'s reason for requesting a new attorney was to gain additional time to "allow [her] to improve [her] position in the case."[6] The court noted the following as additional factors weighing against granting J.F.'s request: J.F.'s existing counsel, who had just reported that she was ready to try the case, was familiar with the case, having been appointed early on in the case; J.F. did not raise her request until the day of trial; and, in the course of discussing scheduling the grounds trial at the pretrial conference, the guardian ad litem agreed not to exercise her right to demand a jury trial. The court further found that the parties had demonstrated their preparedness for trial through pretrial filings and that "there would be significant prejudice" to other multiple persons if the grounds trial were delayed further.

¶20 Regarding the adequacy of the court's inquiry, the record reflects that the circuit court employed a plain spoken, direct inquiry on this topic that was more than adequate for the circumstances. The court gave J.F. multiple opportunities to identify "the basis for [her] request" and repeatedly attempted to learn all of J.F.'s possible concerns about counsel. *See **Rhodes***, 337 Wis. 2d 594,

---

[6] The circuit court further noted that various "outside factors" also raised by J.F. in discussing her request for new counsel could be considered in the course of the trial itself, implying that the factors were not relevant to the request to delay trial for the purposes of appointing new counsel. These additional factors were an illness of one child, J.F. being homeless, and the ongoing pandemic.

11

¶35 (citing *State v. McDowell*, 2004 WI 70, ¶71, 272 Wis. 2d 488, 681 N.W.2d 500); *see also* *Lomax*, 146 Wis. 2d at 362 (the circuit court "should make a meaningfully inquiry" into the motion for change of counsel "rather than summarily deny it" by conducting a hearing on the motion that "may not take more than minutes"). This included the court ensuring that it properly understood J.F. to say that delaying the grounds trial was indeed the basis for her request. These patient efforts by the court revealed that she had little or nothing of substance to say regarding any allegations of problems with current counsel. *See State v. Kazee*, 146 Wis. 2d 366, 372, 432 N.W.2d 93 (1988) (circuit court is not required to "satisfy a particular formula," or "engage in needless inquiry"; "[i]f the reasons for the defendant's request are made known, or are apparent, the court may exercise its discretion without further inquiry").

¶21 J.F. argues that the circuit court should have more specifically inquired into how effectively she believed she was able to communicate with her attorney and also asked J.F. to express her degree of confidence in her attorney's ability to competently represent J.F. at trial. However, despite the court's probing of the issue, it never emerged that J.F. meant to raise a clear complaint about her communication with, or her confidence in, her attorney. J.F. made only vague references to the ideas that her counsel did not "st[i]ck up" for J.F. and that counsel's communication with J.F. was in some manner deficient. The most concrete purported example of a communication failure that J.F. gave the circuit court was the allegation that counsel had failed to accurately predict the length of the final pretrial conference, and the court reasonably explained to J.F. that counsel had given her a fair prediction. Further, as reflected above in the additional background, almost immediately after J.F. purported to raise potential concerns about her attorney, she backtracked and conceded that communication

between the two of them was "okay." J.F. fails to show that either she or her counsel "'offered any evidence of incompetency or of a conflict that made counsel's continued representation untenable'" in a way that could have required the court to inquire more fully than it already had. *See McDowell*, 272 Wis. 2d 488, ¶73 (noting that a circuit court that conducted *no* "colloquy to more fully develop the substance" of a complaint regarding counsel could not "reasonably be faulted for failing to make" such an inquiry given the lack of evidence of an untenable representation).

¶22 Regarding the timeliness of the request, J.F. concedes that this factor weighs in favor of affirming the circuit court. This is a wise concession in a case in which the primary purpose of the request was delay, as J.F. acknowledged in her colloquy with the court. "Eleventh-hour requests are generally frowned upon as a mere tactic to delay the trial." *See Lomax*, 146 Wis. 2d at 361-62.[7]

¶23 J.F. notes that the court in *Lomax* recognized that a genuine conflict meriting a change of counsel could emerge or become significant only on the day of trial. *See id.* at 362. However, the record belies the suggestion that this occurred here. For one thing, when the circuit court asked J.F. why she raised the request at the last minute, she said that she did not know why she waited and conceded that she passively hoped that some unspecified circumstances might change.

---

[7] In in her reply brief, J.F. disputes that the purpose of her request for new counsel was to delay the grounds trial, but the record in every respect supports the circuit court's findings on this topic.

13

¶24　J.F. argues that the record does not reflect that adjournment would have prejudiced any party.  However, as noted above, a circuit court may properly weigh "court administration, calendar management, and witness availability" as considerations, and here it is undisputed that the County intended to call 18 witnesses for an extended, long-delayed trial.  *See **Rhodes***, 337 Wis. 2d 594, ¶34 (approving of the circuit court's consideration of coordinating "at least 12 or 14 witnesses" and an estimated trial length of one week in denying a last-minute request to have counsel appointed after having earlier waived the right to counsel).  It does not add to J.F.'s argument on this issue for her to suggest, in an unclear and speculative manner, that perhaps some prejudice to the County from delay would have been mitigated by the fact that the County already had to prepare for a later grounds trial regarding the parental rights of the father, A.D.  The circuit court had scheduled a *J.F.-only* grounds trial and an *A.D.-only* grounds trial.  The court was certainly not obligated to speculate that prejudice to the County from delaying the former trial might possibly have been lessened in some manner based on the general prospect of some potentially overlapping evidence in the two, separate trials.

¶25　Regarding alleged conflict between J.F. and counsel, J.F. argues that the hybrid representation that she and her counsel engaged in at trial "itself spoke to the total breakdown in communication between J.F. and trial counsel," and that this "total breakdown" weighs significantly in addressing the third ***Lomax*** factor.  She argues that this alleged "total breakdown" demonstrates that, had the circuit court made a "full inquiry" into J.F.'s request when she made it, the court would have discovered the existence of significant conflict.  I reject the entire premise of this argument.  As the County argues and as noted above, no such conflict was

alleged at the time J.F.'s request was made and this settles the third *Lomax* factor strongly in favor of affirmance.

¶26 J.F.'s argument about the trial depends on her extensively summarizing events that could not have been known to the circuit court at the time it made its decision regarding substituting counsel because the events had not yet occurred.[8] J.F.'s argument effectively ignores a fundamental legal principle: a circuit court exercises its discretion in making a challenged ruling based on the facts and circumstances before it at the time it rules, not based on events that have not yet occurred. *See Boyd*, 331 Wis. 2d 697, ¶8 (noting that a circuit court's discretionary decision will be upheld if, in part, the court "'examined the relevant facts'" (quoted source omitted)). As a result, she misses the target in arguing that events at the grounds trial could provide a basis to reverse a ruling made before the trial commenced.

¶27 I question whether J.F. demonstrates a "total breakdown in communication" when both trial counsel and J.F. attempted to advocate for J.F. at the same trial, much less a "total breakdown" that the circuit court could reasonably have known about at the time it denied the request, which is all that could matter. But in any case, assuming without deciding that a "total breakdown" in communications occurred during the course of trial, this would be irrelevant in the absence of facts or circumstances that were before the circuit court at the time of a challenged ruling. J.F. does not argue that events during the

---

[8] Similarly, because the trial events here are irrelevant to proper review of the only ruling challenged on appeal, and because I conclude that the court properly exercised its discretion based on the evidence before it under the circumstances reflected in the record, I do not reach the parties' arguments about whether the alleged conflict in fact prevented J.F. and counsel from making a fair presentation of her case.

course of trial caused her or her counsel to renew her motion for new counsel; her only challenge is to the ruling made before trial commenced. That ruling is amply supported by the record as it existed at the time the court made its ruling, requiring affirmance.

*By the Court*.—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.